

1  GREGORY J. OWEN, ESQ. (CSB#102845)
   SUSAN A. OWEN, ESQ. (CSB#143805)
2  TAMIKO B. HERRON, ESQ. (CSB#155923)
   OWEN, PATTERSON & OWEN
3  Email: susy@owenpatterson.com
   23822 W. Valencia Boulevard, Suite 201
4  Valencia, California 91355
   (661)799-3899
5  (661)799-2774/fax

6  Attorney for Plaintiffs, VANESSA BROOKMAN, individually, as successor in interest to
   Anthony Brookman, and as personal representative of the estate of Anthony Brookman;
7  and DIANA SOQUI

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  VANESSA BROOKMAN, individually, as )   CASE NO.  2:10-cv-01102-GHK-RC
    successor in interest to Anthony Brookman, )
12  and as personal representative of the estate )   **BY FAX**
    of Anthony Brookman; and DIANA SOQUI, )
13                                          )   SECOND AMENDED COMPLAINT
                Plaintiffs,                 )   FOR DAMAGES:
14                                          )
    vs.                                     )   1. Negligence (Wrongful Death);
15                                          )   2. Deprivation of Civil Rights in Violation
    CITY OF LOS ANGELES; LOS                )      of California Civil Code §43;
16  ANGELES POLICE DEPARTMENT;              )   3. Deprivation of Civil Rights in Violation
    OFFICER JOEL GUITIERREZ;                )      of California Civil Code §52.1;
17  OFFICER ALAN GHASSERANI;                )   4. Violation of 42 U.S.C.A. §1983 -
    SARGENT KYLE CAMPBELL;                  )      Individual Defendants;
18  OFFICER JOSE SALDANA; OFFICER           )   5. Violation of 42 U.S.C.A. §1983 -
    DANIEL SCHNEIDER and DOES 1             )      Entity/Municipal Defendants;
19  through 100, Inclusive                  )   6. Negligent Hiring, Training and
                                            )      Supervision;
20                Defendants.               )   7. Assault;
                                            )   8. Battery;
21                                          )   9. Violation of 42 U.S.C.A. §1983 -
                                                   Familial Relationship; and
22                                             10. Loss of Consortium

23                                             PLAINTIFFS' DEMAND FOR JURY
                                               TRIAL
24  ///

25  ///

26  ///

27  ///

28  ///

**GREGORY J. OWEN, ESQ. (CSB#102845)**
**SUSAN A. OWEN, ESQ. (CSB#143805)**
**TAMIKO B. HERRON, ESQ. (CSB#155923)**
**OWEN, PATTERSON & OWEN**
Email: susy@owenpatterson.com
23822 W. Valencia Boulevard, Suite 201
Valencia, California 91355
(661)799-3899
(661)799-2774/fax

Attorney for Plaintiffs, VANESSA BROOKMAN, individually, as successor in interest to Anthony Brookman, and as personal representative of the estate of Anthony Brookman; and DIANA SOQUI

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA BROOKMAN, individually, as successor in interest to Anthony Brookman, and as personal representative of the estate of Anthony Brookman; and DIANA SOQUI, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT; OFFICER JOEL GUITIERREZ; OFFICER ALAN GHASSERANI; SARGENT KYLE CAMPBELL; OFFICER JOSE SALDANA; OFFICER DANIEL SCHNEIDER and DOES 1 through 100, Inclusive )<br><br>Defendants. ) | **CASE NO. 2:10-cv-01102-GHK-RC**<br><br>**SECOND AMENDED COMPLAINT FOR DAMAGES:**<br><br>1. Negligence (Wrongful Death);<br>2. Deprivation of Civil Rights in Violation of California Civil Code §43;<br>3. Deprivation of Civil Rights in Violation of California Civil Code §52.1;<br>4. Violation of 42 U.S.C.A. §1983 - Individual Defendants;<br>5. Violation of 42 U.S.C.A. §1983 - Entity/Municipal Defendants;<br>6. Negligent Hiring, Training and Supervision;<br>7. Assault;<br>8. Battery;<br>9. Violation of 42 U.S.C.A. §1983 - Familial Relationship; and<br>10. Loss of Consortium<br><br>**PLAINTIFFS' DEMAND FOR JURY TRIAL** |

///

///

///

///

///

**COME NOW**, Plaintiffs, VANESSA BROOKMAN, individually, as successor and interest to Anthony Brookman, and as personal representative for the estate of Anthony Brookman, and DIANA SOQUI, for causes of action against Defendants and each of them, and complain and allege as follows:

1. Plaintiff, VANESSA BROOKMAN ("V. BROOKMAN") is the surviving spouse of Decedent, ANTHONY BROOKMAN ("Decedent"), and is a resident of the County of Los Angeles, State of California. V. BROOKMAN brings this action individually and as the successor in interest to Decedent, and as the personal representative of the estate of Decedent.

2. At the time of his death on October 27, 2008, Plaintiff, V. BROOKMAN's, Decedent was intestate and left surviving him as his sole heir at law, his wife, Plaintiff, V. BROOKMAN. Plaintiff, V. BROOKMAN, and Decedent were married on July 10, 2004.

3. Plaintiff, DIANA SOQUI ("SOQUI") is the surviving mother of Decedent and is a resident of the County of Los Angeles, State of California.

4. Defendant, CITY OF LOS ANGELES ("CITY"), is a municipal corporation organized and existing under the laws of the State of California, and is a "business establishment" within the meaning of California Civil Code section 51 et seq.

5. Defendant, CITY OF LOS ANGELES POLICE DEPARTMENT ("LAPD"), is a public entity duly organized and existing under the laws of the state of California and is a "business establishment" within the meaning of California Civil Code §51, et seq.

6. Plaintiffs are informed and believe and thereon allege that Defendant, OFFICER JOSE GUITIERREZ ("GUITIERREZ"), is an individual, and at all times relevant to this action, was an employee of CITY and/or LAPD. Plaintiffs are further informed and believe and thereon allege that at all times relevant to this action, GUITIERREZ was acting in the course and scope of his employment with Defendants, CITY and/or LAPD.

7. Plaintiffs are informed and believe and thereon allege that Defendant, OFFICER ALAN GHASSERANI ("GHASSERANI"), is an individual, and at all times relevant to this action, was an employee of CITY and/or LAPD. Plaintiffs are further

1    informed and believe and thereon allege that at all times relevant to this action,

2    GHASSERANI was acting in the course and scope of his employment with Defendants,

3    CITY and/or LAPD.

4          8.     Plaintiffs are informed and believe and thereon allege that Defendant,

5    SARGENT KYLE CAMPBELL ("CAMPBELL"), is an individual, and at all times relevant

6    to this action, was an employee of CITY and/or LAPD. Plaintiffs are further informed and

7    believe and thereon allege that at all times relevant to this action, CAMPBELL was acting in

8    the course and scope of his employment with Defendants, CITY and/or LAPD.

9          9.     Plaintiffs are informed and believe and thereon allege that Defendant,

10    OFFICER JOSE SALDANA ("SALDANA"), is an individual, and at all times relevant to this

11    action, was an employee of CITY and/or LAPD. Plaintiffs are further informed and believe

12    and thereon allege that at all times relevant to this action, SALDANA was acting in the course

13    and scope of his employment with Defendants, CITY and/or LAPD.

14          10.     Plaintiffs are informed and believe and thereon allege that Defendant,

15    OFFICER DANIEL SCHNEIDER ("SCHNEIDER"), is an individual, and at all times

16    relevant to this action, was an employee of CITY and/or LAPD. Plaintiffs are further

17    informed and believe and thereon allege that at all times relevant to this action, SCHNEIDER

18    was acting in the course and scope of his employment with Defendants, CITY and/or LAPD.

19          11.     At all material times herein, GUITIERREZ, GHASSERANI, CAMPBELL,

20    SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, were each duly appointed, qualified

21    and acting police officers employed as such by CITY and/or LAPD, and at all times herein

22    mentioned, were each acting in the course and scope of such employment and under color of

23    law.  Plaintiffs are informed and believe, and based on such information and belief, herein

24    allege that all times herein mentioned, the Defendants, and each of them, engaged in a

25    common scheme, plan, venture for their common benefit, and their common purpose.  Said

26    Defendants, and each of them, had knowledge of the facts stated herein and acted as herein

27    alleged, for the benefit and for their common purpose.  The acts and omissions of each and all

28    of them are attributable to all of them, and they are jointly and severally liable therefor.

12. At all times herein mentioned, Defendants, and each of them, were acting in their capacity as police officers, police organizations at the site of the incident located at Sepulveda Boulevard and Basset, in the City of Van Nuys, in an incorporated area of Los Angeles, State of California on October 27, 2008.

13. At all times herein mentioned, DOES 11 to 30, inclusive, were officials, supervisors and/or policy makers for and employed by CITY and/or LAPD and at all times herein mentioned were each acting within the course and scope of their employment and under color of law.

14. DOES 31 to 50, inclusive, whose true names and capacities are not known to Plaintiffs, but who are each responsible for the injuries, omissions and deprivations suffered by Plaintiffs as described herein and were each acting in the course and scope of their employment by CITY and/or LAPD, and under color of law, are sued by such fictitious named, but upon ascertaining the true name of a DOE defendants, Plaintiffs will amend this complaint, or seek leave to do so, to allege such true name and capacity in lieu of such fictitious name.

15. Each of the named and unknown individual Defendants sued herein is sued both in his individual and personal capacity, as well as in his official capacity.

16. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy and with the permission and consent of other co-Defendants.

17. All acts and omissions alleged herein were performed by and attributable to all defendants, each acting as agent, employee or under the direction and control of the others. All such acts and omissions were within the scope of such agency and/or employer and/or under color of law, and each defendant instigated, participated in, approved and/or ratified the acts and omissions of other defendants complained of herein.

///

18.     Plaintiffs are unaware of the true names and capacities of those Defendants sued herein as DOE Defendants. Plaintiffs will amend this complaint to allege said Defendants' true names and capacities when that information becomes known to them. Plaintiffs are informed, believe, and thereon allege that these DOE Defendants are legally responsible and liable for the incident, injuries and damages hereinafter set forth, and that each of said Defendants proximately caused the injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, willful or wanton misconduct, including the negligent, careless, deliberately indifferent, intentional, willful or wanton misconduct in creating and otherwise causing the incidents, conditions and circumstances hereinafter set forth, or by reason of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged. Plaintiffs will seek leave to amend this complaint to set forth said true names and identities of the unknown named DOE Defendants when they are ascertained.

19.     At all times relevant herein, Defendants, and each of them, were acting within the course and scope of their employment as officers, sergeants, captains, lieutenants, commanders and chiefs of police, and/or civilian employees, policy makers and representatives of CITY and/or LAPD, and the wrongful acts hereinafter described flow from the very exercise of their authority. Defendants, and each of them, were also acting as an employee, agent and representative of each and every other Defendant herein, and in doing the acts herein alleged were acting with the permission, consent, ratification and authority of their co-Defendants.

20.     Plaintiffs are informed and believe and thereon allege that on or about October 27, 2008 at approximately 8:00 a.m., GUTIERREZ and GHASSERANI responded to a radio call concerning a "disturbed male" on the corner of Sepulveda Boulevard and Basset Street, in the City of Van Nuys, California. Decedent was discovered in the Valley Presbyterian Hospital parking lot, disoriented and lying on his back. He stated he needed shelter from "the earthquake." Decedent submitted to arrest without the need for force. The officers handcuffed Decedent and requested a rescue ambulance. Without waiting for the ambulance to arrive and

1    despite their lack of information as to Decedent's medical condition, the officers assisted

2    Decedent to his feet and walked him to the police car.

3         21.    A few moments later, CAMPBELL, SALDANA and SCHNEIDER arrived at

4    the scene. For unknown reasons, CAMPBELL determined the use of a "hobble restraint" was

5    to be used and placed same on Decedent.  A "hobble restraint" is a total appendage restraint

6    procedure, similar to a hog-tie where one ties a person's wrists and ankles together and

7    restrains them.  Decedent was seated in the patrol car and then stopped breathing.  He was

8    pronounced dead at approximately 3:15 p.m.

9         22.    The Los Angeles Police Department's use of hobbling restraints was not

10   justified in these circumstances and further, the use of such restraints can cause death to one

11   who is overweight as was Decedent.  Decedent was 45 years old at the time of his death.

12        23.    On November 7, 2008, the Los Angeles County Coroner performed an autopsy

13   on the body of Decedent. The Autopsy Report lists the primary cause of death as "Sequelae of

14   Hypoxic Ischemic Encephalopathy" (suffocation), and identifies, among other injuries,

15   abrasions and puncture wounds on the wrist and ankle regions.

16        24.    On November 7, 2008, the death certificate stated that the cause of death was

17   "deferred." On March 30, 2009, the Death Certificate was corrected, and the immediate and

18   primary cause of death was listed as "Sequelae of Hypoxic Ischemic Encephalopathy."

19        25.    Plaintiffs  are informed and believe and thereon allege that both prior to and

20   during the time in which Decedent was assaulted and battered as described above, Decedent

21   was not armed with any kind of weapon, and posed no reasonable threat of violence to any

22   police officer, nor to any other individual. When Decedent was assaulted and battered by

23   officers of CITY and/or LAPD as described above, Decedent made no aggressive

24   movements, no furtive gestures, and no physical movements which would suggest  to a

25   reasonable officer that he was armed with any kind of weapon, or had the will or the ability to

26   inflict substantial bodily harm against any individual.

27   ///

28   ///

26.     Plaintiffs are informed and believe and thereon allege that the involved officers of LAPD and/or CITY were negligently hired, trained and retained by CITY and/or LAPD in that they had known propensities for acting in the fashion that they did with respect to this incident, all of which was a proximate cause of injuries to Plaintiffs and the death of Decedent.

27.     GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, killed Decedent, knowing full well that the established practices, customs and policies of CITY, LAPD and/or DOES 11 to 50, inclusive, permit, condone and ratify the excessive use of force; and would allow, condone and ratify a "cover-up" of illegal, excessive use of force, including GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive's, illegal deadly force and would allow the continued use of excessive force in violation of the laws of the State of California and the laws of the United States. The complete failure of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, CITY, LAPD and DOES 1 to 50, inclusive, to comport and comply with laws of the state of California and of the United States and instead to follow the established practices, customs and policies of CITY, LAPD and DOES 11 to 50, inclusive, which permit and condone the use of excessive force and would allow, condone and ratify a "cover-up" of illegal, excessive use of force, caused GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, to believe that they could hobble Decedent with no legitimate reason, thereby causing the death of Decedent. Such conduct by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,  SCHNEIDER, and DOES 1 to 10, inclusive, was so extreme and outrageous that they caused Plaintiffs to be deprived of the love, care, companionship, familial relationship and support of their husband and son, respectively; i.e., Decedent, causing irreversible injury to Plaintiffs.

28.     In hobbling Decedent pursuant to the policies, customs and practices of  CITY, LAPD and DOES 11 to 50, inclusive, as herein described, and in acting in the course and scope of their employment with CITY and/or LAPD, GUITIERREZ, GHASSERANI,

CAMPBELL, SALDANA,  SCHNEIDER, and DOES 1 to 10, inclusive, violated Decedent's constitutional rights, including but not limited to those provided under the Fourth and Fourteenth Amendments of the United States Constitution, in that Decedent was not engaging in any illegal conduct, did not pose a threat to anyone, and was completely unarmed on the date of the incident and at the time of the incident.  The degree of force used against Decedent was unjustified, and the use of force was objectively unreasonable, unwarranted and excessive.

29.     The hobbling of Decedent was the result of the unconstitutional policies, practices, and procedures in place at CITY and LAPD, and which are sanctioned, authorized and ratified by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, CITY, LAPD and DOES 1 to 50, inclusive.

30.     Said unlawful polices, practices, and procedures created an environment of lawlessness which allowed and encouraged officers, including but not limited to GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,  SCHNEIDER and DOES 1 to 10, inclusive, in CITY and LAPD to employ customs and practices of excessive force and violations of constitutional rights.  Moreover, said misconduct was known, tolerated, condoned and encouraged by supervisory officers of CITY and LAPD. GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,  SCHNEIDER, and DOES 1 to 10, inclusive, acted at all times herein, knowing full well that the established unlawful practices, customs, procedures and policies of CITY and LAPD would allow a cover-up and allow the continued use of illegal force in violation of the United States Constitution. The failure of CITY, LAPD and DOES 11 to 50, inclusive, to correct and prevent these constitutional violations was negligent and reckless to the extreme and thereby subjected Decedent and other residents of CITY to injuries, deaths and constitutional violations.

31.     CITY, LAPD and DOES 1 to 50, inclusive, were on notice prior to October 27, 2008, that proper police procedure and proper police tactics were not in place in CITY and LAPD.  This inadequate training and the failure to implement and follow proper police procedures and proper police tactics is what has led to the needless, reckless and negligent

1   death of Decedent.

2       32.   CITY, LAPD and DOES 11 to 50, inclusive, have been negligent in the hiring

3   and screening of persons employed by CITY and LAPD, and in weeding out persons with

4   reckless, dangerous and/or violent propensities. CITY, LAPD and DOES 11 to 50, inclusive,

5   have been negligent in establishing proper standards, screening, retention and employment

6   policies that would effectively eliminate from employment those persons with reckless,

7   dangerous and/or violent propensities.

8       33.   On March 30, 2009 and April 3, 2009, claim forms were mistakenly submitted

9   to the County of Los Angeles, on behalf of Plaintiffs. On the Claim Forms, it was clear that it

10  was a claim against CITY and LAPD.  True and correct copies of such Claim Forms are

11  attached hereto as "Exhibit 1."

12      34.   The claim filed by V. BROOKMAN with the County of Los Angeles specifies

13  the basis for the claim. It states:  "Anthony Brookman died in custody with the Los Angeles

14  Police Department. He appeared to have numerous bruises on his face and upper torso. It

15  appeared as thought he was beaten to death."  With respect to V. BROOKMAN's damages to

16  date, the claim form says "unknown." (See Exhibit "1.") V. BROOKMAN filed such claim on

17  behalf of herself, individually, as well as on behalf of Decedent. Given that an estate is not a

18  legal entity, she filed the claim as the successor in interest to Decedent and as personal

19  representative of his estate.[1]

20      35.   By letter dated April 3, 2009, the claims filed with the County of Los Angeles

21  were rejected. A true and correct copy of the notice of rejection is attached hereto as "Exhibit

22  2."

23  ///

24  ///

25  ///

26

27

[1]   As set forth in paragraphs 34-39, this case is clearly distinguishable from
28  Nelson v. County of Los Angeles, et al. (2003) 113 Cal.App.4th 783.

9                    Plaintiffs' Second Amended Complaint for Damages

36.     On September 1, 2009, claim forms were filed with the CITY, along with an application to present late claims pursuant to California Government Code section 911.4 et seq.  True and correct copies of the Claim Forms to the CITY and the Application to Present Late Claim Regarding Damages are collectively attached hereto as "Exhibit 3."

37.     The claim filed by V. BROOKMAN with the CITY specifies the following when the claimant is to indicate how the injury occurred: "Anthony Brookman died in the custody of the  Los Angeles Police Department. He appeared to have numerous bruises on his face and upper torso. It appeared as though he was beaten to death. Decedent died in the custody of the Los Angeles Police Department. Initial filing of Claim on April 6, 2009. Copy attached." V. BROOKMAN further indicated that the nature of the damages or injuries which resulted were as follows: "Decedent Anthony Brookman died in custody of Los Angeles Police Department" and that the amount of the claim is "unknown." (See Exhibit "3.") Again, V. BROOKMAN filed such claim on behalf of herself, individually, as well as on behalf of Decedent. Given that an estate is not a legal entity, she filed the claim as the successor in interest to Decedent and as personal representative of his estate.

38.     On September 11, 2009, the application to submit a late claim was denied.  A true and correct copy of the notice of denial is attached hereto as "Exhibit 4."

39.     On September 29, 2009, a petition was filed with the Los Angeles Superior Court, requesting that the Court excuse Plaintiffs from the late claim filing requirements. The petition includes additional information that the damages suffered as a result of Defendants' conduct includes that "Petitioner and decedent were injured in health, strength and activity, suffering from nervous shock, mental anguish, emotional distress. . .," clearly asserting the claim and petition on behalf of herself as well as on behalf of Decedent. A true and correct copy of the petition is attached hereto as "Exhibit 5."  On December 2, 2009, Plaintiffs' petition was granted.

///

///

///

# FIRST CAUSE OF ACTION

## For Negligence Wrongful Death

## (By Plaintiffs Against All Defendants)

40.     Plaintiffs repeat, re-allege and incorporate by this reference each of the preceding paragraphs of this complaint as if set forth in full herein.

41.     On or about October 27, 2008, Defendants, CITY, LAPD, and DOES 11 to 50, inclusive, and each of them, negligently  and carelessly employed, trained, retained, supervised, assigned, controlled and negligently and carelessly failed to adequately or properly discipline GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, with the knowledge at all material times, or in the exercise of reasonable care, Defendants, and each of them, should have properly cared for Decedent while he was in their custody were unjustified in the actions and brutality toward Decedent and further and in addition to, should not have hobbled Decedent resulting in his death.

42.     Defendants, and each of them, entered into a special relationship with Decedent when they undertook and placed him in custody knowing he was disoriented, confused, promising assistance, voluntarily assuming a protective duty for the safety of Decedent.  As a result of the orders and/or conduct of  GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, as well as their promised assistance,  Decedent relied to his detriment that  GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, were safeguarding him.  As a result of the negligent action of the police officers in not properly assessing Decedent's condition, they exposed him to an unreasonable risk of harm, resulting in his death while in the custody of Defendants, and each of them.

43.     On October 27, 2008, when GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, under color of law as agents and employees of CITY and/or LAPD, and DOES 11 to 50, inclusive, arrived at the parking lot of Valley Presbyterian Hospital, said Defendants, and each of them, had numerous duties:

a.    A duty to adequately and appropriately assess the situation, location and Decedent, including a duty to determine Decedent's state of mind, "suspicious" behavior, build, strength and ability to understand Defendants, and each of them;

b.    A duty to advise Decedent of the situation, as to why they were there and to question Decedent about why he was at the location, without use of force, fear and/or intimidation;

c.    A duty to serve and protect members of the public, including Decedent, from harm and to not place Decedent in a more dangerous position that he would have otherwise been had the Defendants, and each of them, not arrived at the scene;

d.    A duty to exercise reasonable care in the placement of Decedent under arrest;

e.    A duty to safeguard Decedent by not exposing Decedent to an unreasonable risk of harm or death;

f.    A duty to act carefully, prudently and safely in regard to Decedent and members of the public who may have been in the same and/or similar situation at the location of the incident, without use of force, fear, intimidation and/or retaliation;

g.    A duty to use only that amount of force which was reasonably necessary to detain, handcuff and/or arrest the Decedent, without causing the assault, battery and wrongful death of Decedent;

h.    A duty to prepare investigative reports which do not vindicate the use of negligent or excessive force, regardless of whether such use was justified;

i.    A duty to prepare investigative reports which do not solely rely on the work of officers involved in the incidents, of negligent or excessive use of force and which include credible testimony by non-law enforcement

Plaintiffs' Second Amended Complaint for Damages

1        witnesses;

2        j.    A duty to prepare investigative reports which include non-law

3                 enforcement witness statements, even when those witness statement

4                 contradict CITY, LAPD and DOES 1 to 50, inclusive;

5        k.    A duty to prepare investigative reports which contain all factual

6                 information and items of physical evidence which contradict the

7                 accounts of CITY and LAPD officers, employees and/or agents;

8        l.    A duty to obtain all evidence when conducting an investigation,

9                 including obtaining witness statements, in order to obtain answers that

10               may exonerate  the accused;

11      m.    A duty to adequately assess and obtain civilian complaints and to

12              research all such complaints to the fullest extent of the law, even when

13              such complaints relate to complaints of excessive use of force and

14              deputy misconduct by CITY, LAPD and DOES 1 to 50, inclusive;

15      n.    A duty to issue public statements exonerating accused individuals who

16              are involved in altercations with police officers, including incidents of

17              alleged negligent or excessive use of force, where the accused has been

18              deemed to be "not guilty" and/or not at fault;

19      o.    A duty by CITY, LAPD and DOES 11 to 50, inclusive, to objectively

20              review investigative reports for accuracy and truthfulness, and to not

21              accept conclusions which are unwarranted by the physical evidence of

22              the incident, or the testimony of non-law enforcement witnesses, and

23              which contradict the officer(s) version of events;

24      p.    A duty to enact and implement policies, practices and procedures as

25              well as training in order to implement said policies, practices and

26              procedures, relating to incidents of negligent or excessive use of force

27              and other misconduct to avoid recurrence of such conduct;

28    ///

q.  A duty to establish an independent and autonomous investigative unit within CITY and LAPD and to assign such a unit to investigate those incidents where the initial witness statements contradict CITY and LAPD personnel and/or  where the officers involved in the incident may have committed a crime or violated  CITY and LAPD regulations;

r.  A duty to maintain a centralized department-wide system for tracking and monitoring of incidents of negligent or excessive force, abuse of authority, falsification of reports, obstruction of justice and other misconduct; so as to identify those officers who engage in such misconduct;

s.  A duty to establish a system for further review and further investigation of all incidents, and investigative reports, where officers and their supervisors allege that a civilian has allegedly resisted arrest or attacked an officer and other witnesses provide contradictory or exculpatory evidence against CITY and/or LAPD personnel;

t.  A duty to establish a system for further review and further investigation of all incidents and reports where witnesses have alleged that CITY and/or LAPD officers have engaged in excessive force, abuse of authority, falsification of investigative reports, fabrication of probable cause, perjury, racial profiling or other misconduct;

u.  A duty to objectively review and analyze all reports or complaints where a civilian has alleged excessive use of force and police officers have filed investigative reports alleging that the civilian has resisted arrest or battered an officer;

v.  A duty to investigate all stages of a civil or administrative proceeding, in case of negligent or excessive use of force, falsification of evidence, the filing of false investigative reports and other acts of misconduct;

Plaintiffs' Second Amended Complaint for Damages

w.  A duty to not destroy physical evidence, including, audiotapes, videotapes, documents, photographs or other exculpatory evidence; and

x.  A duty not to file false charges of resisting arrest, battery on a peace officer, or assault with a deadly weapon against a peace officer, against those civilians who have been the victims of excessive force, unjustified shootings or false arrest.

y.  A duty to wait for rescue and/or trained medical personnel to assess and treat Decedent prior to placing him in hobbling restraints, or to act in reckless and wanton disregard for the rights and safety of Decedent;

z.  A duty to adequately train, adequately assess and adequately supervise GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER and DOES 1 to 10, inclusive, such that on the date of the incident, and prior thereto, GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, would not use inadequate tactics and unlawful measures in a wrongful attempt to detain and arrest Decedent; i.e., a duty to ensure that GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, were trained to adequately assess the situation that ensued with Decedent, to determine probable cause and when such can be used to effectuate an arrest, to detain and arrest Decedent with the use of unlawful force and to ensure that Decedent's rights, guaranteed to him by the Fourth and Fourteenth Amendments, were preserved;

aa.  To conduct adequate background checks prior to hiring any employees and to hire only those employees who survived rigorous background checks into such employee's fitness to become a police officer;

///

///

ab.   To appropriately train each individual to become a highly specialized officer in all areas of the law, including, but not limited to, personal freedoms, constitutional protections, arrest, detention and use of deadly force; and

ac.   To adequately supervise their officers and employees to ensure that such officers and employees are appropriately trained in all areas of the law, including, but not limited to, personal freedoms, constitutional protections, arrest, detention and use of deadly force and to ensure that such officers and employees utilize all appropriate mechanisms while in the field, while effectuating arrest, while conducting searches and seizures and while employing deadly force.

44.   Defendants, and each of them, breached these duties as follows:

a.   By failing to adequately and appropriately assess the situation, location and Decedent, including failing to determine Decedent's state of mind; by failing to adequately determine and appropriately assess the circumstances surrounding Decedent's presence at the subject location, by failing to question Decedent and witnesses; and by failing to adequately determine and appropriately assess Decedent's build and strength and Decedent's ability to understand Defendants, and each of them;

b.   By failing to advise Decedent of the situation, as to why they were there and to question Decedent about why he was at the location, without use of force, fear and/or intimidation;

c.   By failing to serve and protect members of the public, including Decedent, from harm and to not place Decedent in a more dangerous position that he would have otherwise been had the Defendants, and each of them, not arrived at the scene. Specifically, Defendants, and each of them, hobbled Decedent even though they found him

1    disoriented and lying on his back in the parking lot of Valley

2    Presbyterian Hospital;

3    d.    By failing to exercise reasonable care in the placement of Decedent

4          under arrest by assaulting and battering Decedent, and placing

5          hobbling/hog-tie restraints on Decedent, despite the absence of any

6          need for same;

7    e.    By failing to safeguard Decedent by exposing Decedent to an

8          unreasonable risk of harm or death in failing to adequately assess and

9          determine the true situation and Decedent's mental and physical health;

10   f.    By failing to act carefully, prudently and safely in regard to Decedent,

11         without use of force, fear, intimidation and/or retaliation;

12   g.    By failing to use only that amount of force which was reasonably

13         necessary to detain, handcuff and/or arrest the Decedent, without

14         causing the assault, battery and wrongful death of Decedent.

15         Specifically, Defendants, and each of them, assaulted, battered,

16         forcefully and violently detained Decedent, then hobbled Decedent, an

17         unarmed man, posing no threat to the officers or anyone else;

18   h.    By failing to prepare investigative reports designed to vindicate the use

19         of negligent or excessive force, regardless of whether such use was

20         justified;

21   i.    By failing to prepare investigative reports which uncritically rely solely

22         on the work of officers involved in the incidents, of negligent or

23         excessive use of force and which systematically fail to credit testimony

24         by non-law enforcement witnesses;

25   j.    By failing to prepare investigative reports which include non-law

26         enforcement witness statements, even when those witness statement

27         contradict CITY, LAPD and DOES 1 to 50, inclusive;

28   ///

k.  By failing to prepare investigative reports which contain all factual information and items of physical evidence which contradict the accounts of CITY and LAPD officers, employees and/or agent;

l.  By failing to obtain all evidence when conducting an investigation, including obtaining witness statements, in order to obtain answers that may exonerate the accused;

m.  By failing to adequately assess and obtain civilian complaints and to research all such complaints to the fullest extent of the law, even when such complaints relate to complaints of excessive use of force and deputy misconduct by CITY, LAPD and DOES 1 to 50, inclusive;

n.  By failing to issue public statements exonerating accused who are involved in altercations with police officers, including incidents of alleged negligent or excessive use of force, where the accused has been deemed to be "not guilty" and/or not at fault;

o.  The failure of CITY, LAPD and DOES 11 to 50, to objectively review investigative reports for accuracy and truthfulness, and to not accept conclusions which are unwarranted by the physical evidence of the incident, or the testimony of non-law enforcement witnesses, and which contradict the officer version;

p.  By failing to enact and implement policies, practices and procedures as well as training, relating to incidents of negligent or excessive use of force and other misconduct, such as the filing of false reports to justify the use of force;

q.  By failing to establish an independent and autonomous investigative unit within CITY and LAPD and to assign such a unit to investigate those incidents where the initial witness statements contradict CITY and LAPD personnel and/or where the officers involved in the incident may have committed a crime or violated CITY and LAPD regulations;

Plaintiffs' Second Amended Complaint for Damages

r.  By failing to maintain a centralized department-wide system for tracking and monitoring of incidents of negligent or excessive force, abuse of authority, falsification of reports, obstruction of justice and other misconduct; so as to identify those officers who engage in such misconduct;

s.  By failing to establish a system for further review and further investigation of all incidents, and investigative reports, where officers and their supervisors allege that a civilian has allegedly resisted arrest or attacked an officer and other witnesses provide contradictory or exculpatory evidence against CITY and/or LAPD personnel;

t.  By failing to establish a system for further review and further investigation of all incidents and reports where witnesses have alleged that CITY and/or LAPD officers have engaged in excessive force, abuse of authority, falsification of investigative reports, fabrication of probable cause, perjury, racial profiling or other misconduct;

u.  By failing to objectively review and analyze all reports or complaints where a civilian has alleged excessive use of force and police officers have filed investigative reports alleging that the civilian has resisted arrest or battered an officer;

v.  By failing to investigate all stages of a civil or administrative proceeding, in case of negligent or excessive use of force, falsification of evidence, the filing of false investigative reports and other acts of misconduct;

w.  By destroying physical evidence, including, audiotapes, videotapes, documents, photographs or other exculpatory evidence; and

x.  By filing false charges of resisting arrest, battery on a peace officer, or assault with a deadly weapon against a peace officer, against those civilians who have been the victims of excessive force, unjustified

1                shootings or false arrest.

2       y.    By failing to wait for rescue and/or trained medical personnel to assess

3              and treat Decedent prior to placing him in hobbling restraints, acting in

4              reckless and wanton disregard for the rights and safety of Decedent;

5       z.    By failing to adequately train, adequately assess and adequately

6              supervise GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

7              SCHNEIDER and DOES 1 to 10, inclusive, such that on the date of the

8              incident, and prior thereto, GUITIERREZ, GHASSERANI,

9              CAMPBELL, SALDANA,  SCHNEIDER, and DOES 1 to 10,

10             inclusive, would not use inadequate tactics and unlawful measures in a

11             wrongful attempt to detain and arrest Decedent; i.e., they failed to

12             ensure that GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

13             SCHNEIDER, and DOES 1 to 10, inclusive, were trained to adequately

14             assess the situation that ensued with Decedent, to determine probable

15             cause and when such can be used to effectuate an arrest, to detain and

16             arrest Decedent with the use of unlawful force and o ensure that

17             Decedent's rights, guaranteed to him by the Fourth and Fourteenth

18             Amendments, were preserved;

19      aa.   By failing to conduct adequate background checks prior to hiring any

20             employees and to hire only those employees who survived rigorous

21             background checks into such employee's fitness to become a police

22             officer;

23      ab.   By failing to appropriately train each individual to become a highly

24             specialized officer in all areas of the law, including, but not limited to,

25             personal freedoms, constitutional protections, arrest, detention and use

26             of deadly force; and

27   ///

28   ///

ac.  By failing to adequately supervise their officers and employees to ensure that such officers and employees are appropriately trained in all areas of the law, including, but not limited to, personal freedoms, constitutional protections, arrest, detention and use of deadly force and to ensure that such officers and employees utilize all appropriate mechanisms while in the field, while effectuating arrest, while conducting searches and seizures and while employing deadly force.

45.  Defendants, and each of them, proximately caused the death of Decedent by the wrongful and negligent acts described herein above.

46.  At all times herein mentioned, Defendants, and each of them, entered into a special relationship with Decedent when they undertook to question and detain him, and thereafter, when they undertook to place Decedent under arrest, and place hobble/hog-tie restraints on Decedent, despite the absence of any need for same, knowing that they had duties to follow, which they breached as set forth above.

47.  As a proximate result of the death of the Decedent and the above described conduct of Defendants, and each of them, Plaintiffs have sustained substantial economic and non-economic damages resulting from the death of Decedent, including but not limited to financial loss and the loss of the love, comfort, society, attention, services and support of Decedent in an amount according to proof at trial.

48.  As a further proximate result of the above-described conduct of the Defendants, and each of them, and the ensuing death of the Decedent, Plaintiffs have incurred funeral and burial expenses in an amount according to proof at trial.

49.  As a further proximate result of the negligence, lack of attention, carelessness, imprudence and recklessness of the Defendants, and each of them, Plaintiffs sustained, and in the future will sustain loss of income due to the death of Decedent, all to Plaintiffs' damage in an amount which is presently unascertained. Plaintiffs will seek leave of Court to amend this Complaint to allege same once it has been ascertained.

///

Plaintiffs' Second Amended Complaint for Damages

1    50.    As a further proximate result of the above-described wanton and reckless

2    conduct of Defendants, and each of them, Plaintiffs are entitled to seek exemplary and

3    punitive damages against Defendants, and each of them, to deter and punish such future

4    conduct.

5                    **SECOND CAUSE OF ACTION**

6          **For Deprivation of Civil Rights Pursuant to <u>Civil Code</u> §43**

7          **(By Plaintiff, V. BROOKMAN, as Successor-in-Interest to Decedent**

8                        **Against All Defendants)**

9    51.    Plaintiff, V. BROOKMAN, repeats, re-alleges and incorporates by reference

10   the preceding paragraphs of this complaint as if set forth in full.

11   52.    California <u>Civil Code</u> §43 states: "Besides the personal rights mentioned or

12   recognized in the Government Code, every person has, subject to the qualifications and

13   restrictions provided by law, the right of protection from bodily restraint or harm, from

14   personal insult, from defamation, and from injury to his personal relations."

15   53.    At all times herein mentioned herein, there existed between Decedent and

16   Defendants, and each of them, a professional, service or business relationship which was

17   facilitated, encouraged and promoted by virtue of Defendants, and each of their positions, as

18   peace officers, police officers, detectives, supervisors, superiors, employers, employees and

19   agents of CITY and/or LAPD.

20   54.    Decedent had the right of protection from bodily restraint or harm, from

21   personal insult, from use of unnecessary and exclusively dangerous restraints, from use of

22   deadly force, and from injury to his personal relations with Plaintiff, V. BROOKMAN, by the

23   Defendants, and each of them.

24   55.    Decedent had the personal right to be free from intimidation, coercion, duress,

25   intimidation, assault, battery, violent arrest, forceful detention, handcuffing, hobbling and

26   wrongful death at the hands of Defendants, and each of them.

27   56.    Decedent was an unarmed man.

28   ///

57. Decedent had an expectation of personal rights, freedom, freedom of association and freedom of speech, along with an enjoyment of rights secured to him by the Constitution, the laws of the United States and the laws of the State of California. Decedent's rights were interfered with by Defendants, and each of them, when they breached their duties as stated herein above.

58. As a direct and proximate result of the negligence, lack of attention, carelessness, imprudence and recklessness of the Defendants, and each of them, while Decedent was under the care, custody and control of Defendants, and each of them, Decedent was injured in health, strength and activity, suffering from nervous shock, mental anguish, emotional distress and injury to his nervous system and person, all of which injuries caused Decedent great mental suffering and will continue to cause Plaintiff, V. BROOKMAN, great mental and physical suffering, resulting in general damages in an amount to be ascertained according to proof.

59. As a further and proximate result of the negligence, lack of attention, carelessness, imprudence and recklessness on the part of the Defendants, and each of them, during the time Decedent was under the care, custody and control of Defendants, and each of them, Decedent incurred, medical and other expenses, the exact amount of which are not known at this time. Further, Plaintiff, V. BROOKMAN, will likely incur future medical and other expenses, the exact amount of which are not known at this time. Plaintiff, V. BROOKMAN, will ask leave of Court to amend this Complaint to allege the same when it is ascertained, or to prove same at time of trial.

60. As a direct and proximate result of the above-described acts and/or omissions, lack of attention, carelessness, imprudence and recklessness on the part of Defendants, and each of them, Plaintiff, V. BROOKMAN, sustained, and in the future will sustain loss of income due to the death of Decedent, all to Plaintiff, V. BROOKMAN's, damage in an amount which is presently unascertained. Plaintiff, V. BROOKMAN, will ask leave of Court to amend this Complaint to allege same once it has been ascertained, or prove same at time of trial.

61.     As a further proximate result of the above-described wanton and reckless conduct of Defendants, and each of them, Plaintiff, V. BROOKMAN, is entitled to seek exemplary and punitive damages against Defendants, and each of them, to deter and punish such future conduct.

### THIRD CAUSE OF ACTION

**For Deprivation of Civil Rights Pursuant to <u>Civil Code</u> §52.1**

**(By Plaintiff, V. BROOKMAN, as Successor-in-Interest to Decedent**

**Against All Defendants)**

62.     Plaintiff, V. BROOKMAN, repeats, re-alleges and incorporates by reference the preceding paragraphs of this complaint as if set forth in full.

63.     California <u>Civil Code</u> §52.1 states, in pertinent part: "(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured. (c) An action brought pursuant to subdivision...(b) may be filed either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which a person whose conduct complained of resides or has his or her place of business..."

64.     At all times herein mentioned herein, there existed between Decedent and Defendants, and each of them, a professional, service or business relationship which was facilitated, encouraged and promoted by virtue of Defendants, and each of their positions, as peace officers, police officers, detectives, supervisors, superiors, employers, employees and agents of CITY and/or LAPD.

65.     Decedent had the right of protection from bodily restraint or harm, from personal insult, from use of restraints, from use of deadly force, and from injury to his personal relations with Plaintiff, V. BROOKMAN, by the Defendants, and each of them.

66.    Decedent had the personal right to be free from worry of intimidation, coercion, duress, intimidation, assault, battery, violent arrest, forceful detention, handcuffing, hobbling and wrongful death at the hands of Defendant, and each of them.

67.    Decedent had an expectation of personal rights, freedom, freedom of association and freedom of speech, along with an enjoyment of rights secured to him by the Constitution, the laws of the United States and the laws of the State of California. Decedent's rights were interfered with by Defendants, and each of them, when they breached their duties as stated herein above.

68.    As a direct and proximate result of the negligence, lack of attention, carelessness, imprudence and recklessness of the Defendants, and each of them, while Decedent was under the care, custody and control of Defendants, and each of them, Decedent was injured in his health, strength and activity, suffering from nervous shock, mental anguish, emotional distress and injury to his nervous system and person, all of which injuries have caused Decedent great mental and physical suffering and will continue to cause Plaintiff, V. BROOKMAN, great mental and physical suffering, all to their general damages in an amount to be ascertained according to proof.

69.    As a further and proximate result of the negligence, lack of attention, carelessness, imprudence and recklessness on the part of the Defendants, and each of them, during the time Decedent was under the care, custody and control of Defendants, and each of them, Decedent incurred medical and other expenses, the exact amount of which are not known at this time. Further, Plaintiff, V. BROOKMAN, will likely incur future medical and other expenses, the exact amount of which are not known at this time. Plaintiff, V. BROOKMAN, will ask leave of Court to amend this Complaint to allege the same when it is ascertained, or to prove same at time of trial.

70.    As a direct and proximate result of the above-described acts and/or omissions, lack of attention, carelessness, imprudence and recklessness on the part of Defendants, and each of them, Plaintiff, V. BROOKMAN, sustained, and in the future will sustain loss of income due to the death of Decedent, all to Plaintiff, V. BROOKMAN's, damage in an

amount which is presently unascertained. Plaintiff, V. BROOKMAN will ask leave of Court to amend this Complaint to allege same once it has been ascertained, or prove same at time of trial.

71.     As a further and proximate result of the above-described conduct of the Defendants, and each of them, and the ensuing death of Decedent, Plaintiff, V. BROOKMAN, individually and as Successor-in-Interest to Decedent, has incurred and will incur attorney's fees. Pursuant to California Civil Code §52.1(h): "In addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to subdivision (b), the court may award the petitioner or Plaintiffs reasonable attorney's fees."

72.     As a further proximate result of the above-described wanton and reckless conduct of Defendants, and each of them, Plaintiff, V. BROOKMAN, is entitled to seek exemplary and punitive damages against Defendants, and each of them, to deter and punish such future conduct.

## FOURTH CAUSE OF ACTION

### For Violation of Civil Rights Pursuant to 42 U.S.C.A. §1983;

### (By Plaintiff, V. BROOKMAN, as Successor-in-Interest to Decedent Against

### Defendants, GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER,

### and DOES 1 to 10, inclusive)

73.     Plaintiff, V. BROOKMAN, repeats, re-alleges and incorporates by reference the preceding paragraphs of this complaint as if set forth in full.

74.     On the date of the incident, prior to and at the time of the incident, Decedent was unarmed.

75.     Though it was reported that Decedent was "disturbed," it is unknown what that activity was and/or if it was even true.

76.     There is no indication that Decedent was violent; there is no indication that Decedent threatened GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive; there is no indication that Decedent was verbally or physically abusive to GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

SCHNEIDER, and DOES 1 to 10, inclusive; there is no indication that Decedent pretended to have a weapon or that Decedent threatened bodily harm to GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive; and there is no evidence that the force used by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, was necessary, lawful and prudent under the circumstances. Therefore, GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive,  lacked the probable cause necessary to arrest, detain, assault, batter and hobble Decedent.

77.     The force used by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, was with wanton and reckless disregard to the rights and safety of Decedent and the force used by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, evidenced such wantonness and recklessness with respect to the unjustified infliction of damages to Decedent and as such is tantamount to a knowing willingness that such damages; i.e., wrongful death, would occur. The force used by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, was excessive and unreasonable in light of the circumstances described herein, and as such it was used in violation of Decedent's Fourth and Fourteenth Amendment rights.

78.     GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, had no knowledge at the moment of the attempted arrest, and prior thereto, based on the totality of circumstances as stated above, to believe and/or conclude that Decedent had committed or was about to commit an offense. A warrantless arrest must be based on probable cause and without same, GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, had no right to violate Decedent's Fourth and Fourteenth Amendment rights.

79.     Decedent was subjected to a deprivation of rights, privileges and immunities guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, in that GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1

1    to 10, inclusive, (a) wrongfully detained Decedent without probable cause; (b) used

2    unreasonable deadly force upon Decedent by assaulting, battering and ultimately hobbling

3    Decedent; (c) seized Decedent's person by use of force, fear, intimidation and/or coercion;

4    and (d) failed to wait for the arrival of rescue personnel, such that Decedent was placed in the

5    police vehicle, hobbled/hog-tied, and allowed to die.

6          80.    Pursuant to 42 U.S.C.A. §1983, GUITIERREZ, GHASSERANI, CAMPBELL,

7    SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, under color of law, while employed

8    by CITY and/or LAPD, and while acting under color of law at the time of the incident,

9    subjected Decedent, a citizen of the United States, to the deprivation of his rights, privileges

10    and immunities secured by the United States Constitution, the California Constitution and

11    laws, and as such, GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER,

12    and DOES 1 to 10, inclusive, are liable to Plaintiff, V. BROOKMAN, as Successor-in-

13    Interest to Decedent.

14          81.    As a citizen of the United States, Decedent under the Fourth and Fourteenth

15    Amendment, was entitled to be free from such unlawful conduct by GUITIERREZ,

16    GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive. The

17    right to be free from excessive force is a clearly established right under the Fourth

18    Amendment's prohibition against unreasonable seizures of the person. The right to be free

19    from excessive force during an arrest is the right to due process which is a clearly established

20    right under the Fourteenth Amendment.

21          82.    The acts of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

22    SCHNEIDER, and DOES 1 to 10, inclusive, clearly shock the conscience and involve a

23    substantial violation of Decedent's substantive due process in that GUITIERREZ,

24    GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, by

25    the following: (a) applying unnecessary and unreasonable force against Decedent's person,

26    without probable cause; (b) failing to show a relationship between the forced used; i.e.,

27    assault, battery, hobbling and the conduct of the Decedent which required such force; (c)

28    wrongfully causing the death of the Decedent; and (d) failing to show that the force used was

1  applied in a good faith effort to maintain or restore discipline, and instead using such force

2  maliciously and sadistically for the purpose of inflicting harm upon Decedent.

3       83.    As a direct and proximate result of the negligence, lack of attention,

4  carelessness, imprudence and recklessness of GUITIERREZ, GHASSERANI, CAMPBELL,

5  SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, while Decedent was under the care,

6  custody and control of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

7  SCHNEIDER, and DOES 1 to 10, inclusive, Decedent was injured in health, strength and

8  activity, suffering from nervous shock, mental anguish, emotional distress and injury to his

9  nervous system and person, all of which injuries have caused Decedent great mental and

10  physical suffering and will continue to cause V. BROOKMAN, great mental, physical

11  suffering, all to Plaintiff, V. BROOKMAN's, general damages in an amount to be ascertained

12  according to proof.

13       84.    As a further and proximate result of the negligence, lack of attention,

14  carelessness, imprudence and recklessness on the part of GUITIERREZ, GHASSERANI,

15  CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive,  during the time

16  Decedent was under the care, custody and control of GUITIERREZ, GHASSERANI,

17  CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, Plaintiff, V.

18  BROOKMAN, and Decedent incurred, medical and other expenses, the exact amount of

19  which are not known at this time.

20       85.    As a further and proximate result of the above-described conduct of

21  GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to

22  10, inclusive, and the ensuing death of Decedent, Plaintiff, V. BROOKMAN, has incurred

23  and will incur attorney's fees, the exact amount of which is not known at this time.

24  Accordingly, Plaintiff, V. BROOKMAN, requests attorney's fees pursuant to 42 U.S.C.A.

25  §1988.

26       86.    As a further proximate result of the above-described wanton and reckless

27  conduct of  GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and

28  DOES 1 to 10, inclusive, Plaintiff, V. BROOKMAN, is entitled to seek exemplary and

1  punitive damages against GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

2  SCHNEIDER, and DOES 1 to 10, inclusive, to deter and punish such future conduct.

### FIFTH CAUSE OF ACTION

**For Violation of Civil Rights Pursuant to 42 U.S.C.A. §1983**

**(By Plaintiff, V. BROOKMAN, as Successor-in-Interest to Decedent Against**

**Defendants, CITY, LAPD and DOES 11 to 50, inclusive)**

7      87.    Plaintiff, V. BROOKMAN, repeats, re-alleges and incorporates by reference

8  the preceding paragraphs of this complaint as if set forth in full.

9      88.    CITY, LAPD and DOES 11 to 50, inclusive, were the supervisors, employers,

10  trainers, officials and policy makers prior to and at the time of the incident, and were the

11  direct supervisors, employers, trainers, officials and policy makers in charge of

12  GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to

13  10, prior to and at the time of the incident. As such, they had control over GUITIERREZ,

14  GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, and

15  all actions taken by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

16  SCHNEIDER, and DOES 1 to 10, inclusive.

17      89.    CITY, LAPD and DOES 11 to 50, inclusive, had final decision making

18  authority and policy making authority in regard to the training, hiring, tactics and policies

19  used and/or effectuated by CITY, LAPD and DOES 11 to 50, inclusive. CITY, LAPD and

20  DOES 11 to 50, inclusive, made, effectuated and enforced the policies and procedures of its

21  officers and employees, and such policies and procedures were utilized by GUITIERREZ,

22  GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive,

23  prior to and at the time of the incident.

24      90.    Specifically, CITY, LAPD and DOES 11 to 50, inclusive, failed to adequately

25  train, adequately assess and adequately supervise GUITIERREZ, GHASSERANI,

26  CAMPBELL, SALDANA, SCHNEIDER and DOES 1 to 10, inclusive, such that on the date

27  of the incident, and prior thereto, GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

28  SCHNEIDER, and DOES 1 to 10, inclusive, used inadequate tactics and unlawful measures in

1    a wrongful attempt to detain and arrest Decedent. Specifically, GUITIERREZ,

2    GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive,

3    were not trained to adequately assess the situation that ensued with Decedent, they were not

4    adequately trained to determine probable cause and when such can be used to effectuate an

5    arrest, they were not trained to detain and arrest Decedent with the use of unlawful force and

6    they were not trained to ensure that Decedent's rights, guaranteed to him by the Fourth and

7    Fourteenth Amendments, were preserved.

8         91.    Plaintiff, V. BROOKMAN, is informed and believes and thereon alleges that

9    CITY, LAPD and DOES 11 to 50, inclusive, had a pattern of allowing their officers and

10   employees, to work, under color of law, without being adequately and appropriately trained,

11   and that such policy was common and well known that it constituted a custom that

12   represented such official policy.

13        92.    Plaintiff, V. BROOKMAN, is informed and believes and thereon alleges that

14   CITY, LAPD and DOES 11 to 50, inclusive, acted with a deliberate indifference to

15   Decedent's rights by failing to discipline GUITIERREZ, GHASSERANI, CAMPBELL,

16   SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, after the incident, and that prior to

17   the date of the incident, CITY, LAPD and DOES 11 to 50, inclusive, knew or had to reason to

18   know that GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and

19   DOES 1 to 10, inclusive, were not properly trained and that by such improper training, CITY,

20   LAPD and DOES 11 to 50, inclusive, knew or had reason to know that obvious consequences

21   of constitutional violations would occur.

22        93.    Plaintiff, V. BROOKMAN, is informed and believes and thereon alleges that

23   CITY, LAPD and DOES 11 to 50, inclusive, are direct participants in the unconstitutional

24   conduct of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and

25   DOES 1 to 10, inclusive, have ratified the unlawful conduct of GUITIERREZ,

26   GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive.

27        94.    The inactions of CITY, LAPD and DOES 11 to 50, inclusive, in regard to the

28   unlawful and unconstitutional conduct of GUITIERREZ, GHASSERANI, CAMPBELL,

SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, shows a deliberate indifference for the rights of Decedent, and shows acquiescence of the unlawful and unconstitutional conduct of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, such that CITY, LAPD and DOES 11 to 50, inclusive, are liable for the wrongful death of Decedent.

95.     As a direct and proximate result of the negligence, lack of attention, carelessness, imprudence and recklessness of CITY, LAPD and DOES 11 to 50, inclusive, while Decedent was under the care, custody and control of CITY, LAPD and DOES 11 to 50, inclusive, Decedent was injured in health, strength and activity, suffering from nervous shock, mental anguish, emotional distress and injury to his nervous system and person, all of which injuries have caused Decedent great physical and mental suffering, and will continue to cause Plaintiff, V. BROOKMAN, great mental and physical suffering, all to Plaintiff, V. BROOKMAN's, general damages in an amount to be ascertained according to proof.

96.     As a further and proximate result of the negligence, lack of attention, carelessness, imprudence and recklessness on the part of CITY, LAPD and DOES 11 to 50, inclusive,  during the time Decedent was under the care, custody and control of CITY, LAPD and DOES 11 to 50, inclusive, Plaintiff, V. BROOKMAN, and Decedent incurred, medical and other expenses, the exact amount of which are not known at this time.

97.     As a further and proximate result of the above-described conduct of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, and the ensuing death of Decedent, Plaintiff, V. BROOKMAN, has incurred and will incur attorney's fees, the exact amount of which is not known at this time. Accordingly, Plaintiff, V. BROOKMAN, requests attorney's fees pursuant to 42 U.S.C.A. §1988.

98.     As a further proximate result of the above-described wanton and reckless conduct of  GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, Plaintiff, V. BROOKMAN, is entitled to seek exemplary and punitive damages against GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

1   SCHNEIDER, and DOES 1 to 10, inclusive, to deter and punish such future conduct.

2   ### SIXTH CAUSE OF ACTION

3   ### For Negligent Hiring, Training and Supervision

4   ### (By Plaintiffs Against Defendants, DOES 11 to 30, inclusive)

5   99.   Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1 to 39,

6   inclusive, of this complaint as if set forth in full.

7   100.   GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER,

8   and DOES 1 to 10, inclusive, were hired, trained and supervised by DOES 11 to 30, inclusive,

9   to perform their duties on behalf of CITY and LAPD prior to and at the time of the incident.

10   101.   DOES 11 to 30, inclusive, failed to adequately train, adequately assess and

11   adequately supervise GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

12   SCHNEIDER, and DOES 1 to 10, inclusive, such that on the date of the incident, and prior

13   thereto, GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and

14   DOES 1 to 10, inclusive, used inadequate tactics and unlawful measures in a wrongful

15   attempt to detain and arrest Decedent. Specifically, GUITIERREZ, GHASSERANI,

16   CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, were not trained to

17   adequately assess the situation that ensued with Decedent, they were not adequately trained to

18   determine probable cause and when probable cause can be used to effectuate an arrest, they

19   were not trained to detain and arrest Decedent with the use of unlawful force and they were

20   not trained to ensure that Decedent's rights, guaranteed to him by the Fourth and Fourteenth

21   Amendments, were preserved.

22   102.   DOES 11 to 30, inclusive, had the authority to hire, train and supervise, and

23   otherwise implement policies and procedures for the hiring, training and supervising of its

24   officers, including, but not limited to, GUITIERREZ, GHASSERANI, CAMPBELL,

25   SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive. As such, DOES 11 to 30, inclusive,

26   had the following duties, in addition to those set forth hereinabove:

27   ///

28   ///

a.     To conduct adequate background checks prior to hiring any employees and to hire only those employees who survived rigorous background checks into such employee's fitness to become a police officer;

b.     To appropriately train each individual to become a highly specialized officer in all areas of the law, including, but not limited to, personal freedoms, constitutional protections, arrest, detention and use of deadly force; and

c.     To adequately supervise their officers and employees to ensure that such officers and employees are appropriately trained in all areas of the law, including, but not limited to, personal freedoms, constitutional protections, arrest, detention and use of deadly force and to ensure that such officers and employees utilize all appropriate mechanisms while in the field, while effectuating arrest, while conducting searches and seizures and while employing deadly force.

103.   DOES 11 to 30, inclusive, in addition to the breaches of duties identified hereinabove, breached the above stated duties as follows:

a.     By failing to conduct adequate background checks prior to hiring any employees and to hire only those employees who survived rigorous background checks into such employee's fitness to become a police officer;

b.     By failing to appropriately train each individual to become a highly specialized officer in all areas of the law, including, but not limited to, personal freedoms, constitutional protections, arrest, detention and use of deadly force; and

c.     By failing to adequately supervise their officers and employees to ensure that such officers and employees are appropriately trained in all areas of the law, including, but not limited to, personal freedoms, constitutional protections, arrest, detention and use of deadly force and

1    to ensure that such officers and employees utilize all appropriate

2    mechanisms while in the field, while effectuating arrest, while

3    conducting searches and seizures and while employing deadly force.

4    104.    DOES 11 to 30, inclusive, proximately caused the death of Decedent by the

5    wrongful and negligent acts described herein above.

6    105.    At all times herein mentioned, DOES 11 to 30, inclusive, entered into a special

7    relationship with Decedent when the officers and employees under their supervision and

8    control; i.e., GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and

9    DOES 1 to 10, inclusive, undertook and placed Decedent in custody knowing he was

10   disoriented, confused, promising assistance, and voluntarily assuming a protective duty for

11   the safety of Decedent.

12   106.    As a direct and proximate result of the negligence, lack of attention,

13   carelessness, imprudence and recklessness of DOES 11 to 30, inclusive, while Decedent was

14   under the care, custody and control of DOES 11 to 30, inclusive, Plaintiffs and Decedent were

15   injured in health, strength and activity, suffering from nervous shock, mental anguish,

16   emotional distress and injury to their nervous system and person, all of which injuries have

17   caused Plaintiffs and Decedent and continue to cause Plaintiffs' great mental and physical

18   suffering, all to Plaintiffs' general damages in an amount to be ascertained according to proof.

19   107.    As a further and proximate result of the negligence, lack of attention,

20   carelessness, imprudence and recklessness on the part of DOES 11 to 30, inclusive,  during

21   the time Decedent was under the care, custody and control of DOES 11 to 30, inclusive,

22   Plaintiffs and Decedent incurred, medical and other expenses, the exact amount of which are

23   not known at this time. Further, Plaintiffs will likely incur future medical and other expenses,

24   the exact amount of which are not known at this time. Plaintiffs will ask leave of Court to

25   amend this Complaint to allege the same when it is ascertained, or to prove same at time of

26   trial.

27   108.    As a direct and proximate result of the above-described acts and/or omissions,

28   lack of attention, carelessness, imprudence and recklessness on the part of DOES 11 to 30,

1   inclusive, Plaintiffs sustained, and in the future will sustain loss of income due to the death of

2   Decedent, all to Plaintiffs' damage in an amount which is presently unascertained. Plaintiffs

3   will ask leave of Court to amend this Complaint to allege same once it has been ascertained,

4   or prove same at time of trial.

5       109.    As a further proximate result of the above-described wanton and reckless

6   conduct of as described hereinabove, Plaintiffs are entitled to seek exemplary and punitive

7   damages against DOES 11 to 30, inclusive, to deter and punish such future conduct.

8                              **SEVENTH CAUSE OF ACTION**

9                                      **For Assault**

10      **(By Plaintiff, V. BROOKMAN, as Successor-in-Interest to Decedent Against**

11        **GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER,**

12                            **and DOES 1 to 10, inclusive)**

13      110.    Plaintiff, V. BROOKMAN, repeats, re-alleges and incorporates by reference

14  paragraphs 1 to 39, inclusive, of this complaint as if set forth in full.

15      111.    In doing the wrongful acts described herein above, GUITIERREZ,

16  GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive,

17  placed Decedent in apprehension of harmful contact as follows:

18          a.      When GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

19                  SCHNEIDER, and DOES 1 to 10, inclusive, approached Decedent,

20                  Decedent was fearful of being touched, grabbed, handcuffed, held

21                  against his will, arrested, detained, and/or hobbled;

22          b.      GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

23                  SCHNEIDER, and DOES 1 to 10, inclusive, continually violated

24                  Decedent's personal space by standing in close proximity to him,

25                  attempting to detain him, attempting to arrest him, attempting to

26                  handcuff him, and attempting to and succeeding in placement of hobble

27                  restraints on him; and

28  ///

                                    36        Plaintiffs' Second Amended Complaint for Damages

c.   Decedent at all relevant times herein was in fear of being touched by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive.

112.   In doing such actions, GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER and DOES 1 to 10, inclusive, intended to cause or to place Decedent in apprehension of a harmful contact with GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive.

113.   Prior to the harmful and offensive touching of Decedent by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, Decedent was placed in imminent apprehension of said touching.

114.   The actions by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, were unlawful, unnecessary, unreasonable and excessive in light of all of the facts stated herein, including but not limited to: (a) no description of the alleged "disturbing" activity has been provided; (b) Decedent was lawfully at/on the subject premises prior to and at the time of the incident; (c) Decedent was unarmed prior to and at the time of the incident; (d) Decedent posed no threat to GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 50, inclusive; (e) Decedent was hobbled despite the lack of any cause to do so; and (f) Decedent was placed in the police vehicle, hobbled/hog-tied, and left to die.

115.   In doing such actions described herein above, GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, caused Decedent to be in apprehension of imminent and harmful contact with Decedent's person, against Decedent's express wishes and without Decedent's consent.

116.   As a result of the acts as alleged above, Decedent was, in fact, placed in great apprehension of a harmful contact with his person.

117.   As a direct and proximate result of the negligence, lack of attention, carelessness, imprudence and recklessness of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, while Decedent was under the care,

1   custody and control of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

2   SCHNEIDER, and DOES 1 to 10, inclusive, Decedent was injured in health, strength and

3   activity, suffering from nervous shock, mental anguish, emotional distress and injury to his

4   nervous system and person, all of which injuries have caused Decedent great mental and

5   physical suffering and will continue to cause Plaintiff, V. BROOKMAN,  great mental and

6   physical suffering, all to Plaintiff, V. BROOKMAN's, general damages in an amount to be

7   ascertained according to proof.

8          118.    As a further and proximate result of the negligence, lack of attention,

9   carelessness, imprudence and recklessness on the part of GUITIERREZ, GHASSERANI,

10  CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, during the time

11  Decedent was under the care, custody and control of GUITIERREZ, GHASSERANI,

12  CAMPBELL, SALDANA, SCHNEIDER  and DOES 1 to 10, inclusive, Plaintiff, V.

13  BROOKMAN, and Decedent incurred, medical and other expenses, the exact amount of

14  which are not known at this time. Further, Plaintiff, V. BROOKMAN, will likely incur future

15  medical and other expenses, the exact amount of which are not known at this time. Plaintiff,

16  V. BROOKMAN, will ask leave of Court to amend this Complaint to allege the same when it

17  is ascertained, or to prove same at time of trial.

18          119.    As a direct and proximate result of the above-described acts and/or omissions,

19  lack of attention, carelessness, imprudence and recklessness on the part of GUITIERREZ,

20  GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive,

21  Plaintiff, V. BROOKMAN, sustained, and in the future will sustain loss of income due to the

22  death of Decedent, all to Plaintiff, V. BROOKMAN's, damage in an amount which is

23  presently unascertained. Plaintiff, V. BROOKMAN, will ask leave of Court to amend this

24  Complaint to allege same once it has been ascertained, or prove same at time of trial.

25          120.    As a further proximate result of the above-described wanton and reckless

26  conduct of  GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and

27  DOES 1 to 20, inclusive, Plaintiff, V. BROOKMAN, is entitled to seek exemplary and

28  punitive damages against GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

SCHNEIDER,  and DOES 1 to 20, inclusive, to deter and punish such future conduct.

## EIGHTH CAUSE OF ACTION

### For Battery

### (By Plaintiff, V. BROOKMAN, as Successor-in-Interest to Decedent Against GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive)

121.    Plaintiff, V. BROOKMAN, repeats, re-alleges and incorporates by reference paragraphs 1 to 39, inclusive, of this complaint as if set forth in full.

122.    In doing the wrongful acts described herein above, GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, intended to and did cause a harmful and offensive touching of Decedent's person as follows:

        a.    Touching Decedent's person without his permission, consent and knowledge;

        b.    Grabbing and pulling on Decedent's person without his permission, consent and knowledge; and

        c.    Hobbling Decedent's person.

123.    In addition, as stated in the Autopsy Report, one of the immediate causes of death was Sequelae of Hypoxic Ischemic Encephalopathy (suffocation), caused by the unnecessary and unreasonable use of hobble restraints on Decedent.

124.    The actions by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, were unlawful, unnecessary, unreasonable and excessive in light of all of the facts stated herein, including but not limited to: (a) no description of the alleged "disturbing" activity has been provided; (b) Decedent was lawfully at/on the subject premises prior to and at the time of the incident; (c) Decedent was unarmed prior to and at the time of the incident; (d) Decedent posed no threat to GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 50, inclusive; (e) Decedent was hobbled despite the lack of any cause to do so; and (f) Decedent was placed in the police vehicle, hobbled/hog-tied, and left to die.

125.   In doing such actions described herein above, GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, caused Decedent to suffer offensive and harmful contact, against Decedent's express wishes and without Decedent's consent.

126.   As a direct and proximate result of the negligence, lack of attention, carelessness, imprudence and recklessness of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, while Decedent was under the care, custody and control of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, Decedent were injured in health, strength and activity, suffering from nervous shock, mental anguish, emotional distress and injury to their nervous system and person, all of which injuries have caused Decedent great physical and mental suffering and will continue to cause Plaintiff, V. BROOKMAN,  great mental and physical suffering, all to Plaintiff, V. BROOKMAN's, general damages in an amount to be ascertained according to proof.

127.   As a further and proximate result of the negligence, lack of attention, carelessness, imprudence and recklessness on the part of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, during the time Decedent was under the care, custody and control of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER  and DOES 1 to 10, inclusive, Plaintiff, V. BROOKMAN, and Decedent incurred, medical and other expenses, the exact amount of which are not known at this time. Further, Plaintiff, V. BROOKMAN, will likely incur future medical and other expenses, the exact amount of which are not known at this time. Plaintiff, V. BROOKMAN, will ask leave of Court to amend this Complaint to allege the same when it is ascertained, or to prove same at time of trial.

128.   As a direct and proximate result of the above-described acts and/or omissions, lack of attention, carelessness, imprudence and recklessness on the part of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, Plaintiff, V. BROOKMAN, sustained, and in the future will sustain loss of income due to the

1   death of Decedent, all to Plaintiff, V. BROOKMAN's, damage in an amount which is

2   presently unascertained. Plaintiff, V. BROOKMAN, will ask leave of Court to amend this

3   Complaint to allege same once it has been ascertained, or prove same at time of trial.

4      129. As a further proximate result of the above-described wanton and reckless

5   conduct of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and

6   DOES 1 to 20, inclusive, Plaintiff, V. BROOKMAN, is entitled to seek exemplary and

7   punitive damages against GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

8   SCHNEIDER, and DOES 1 to 20, inclusive, to deter and punish such future conduct.

9            **NINTH CAUSE OF ACTION**

10     **Interference with Familial Relationship - 42 U.S.C.A. §1983 and <u>Civil Code</u> §43**

11           **(By Plaintiffs Against All Defendants)**

12      130. Plaintiffs repeat, re-allege and incorporate by reference the preceding

13   paragraphs of this complaint as if set forth in full.

14      131. By doing the acts complained of herein, Defendants, and each of them, acted

15   with deliberate indifference to Plaintiffs' and Decedent's rights of familial relationship and

16   society. The actions by GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

17   SCHNEIDER and DOES 1 to 10, inclusive, were unlawful, unnecessary, unreasonable and

18   excessive in light of all of the facts stated herein, including but not limited to: (a) no

19   description of the alleged "disturbing" activity has been provided; (b) Decedent was lawfully

20   at/on the subject premises prior to and at the time of the incident; (c) Decedent was unarmed

21   prior to and at the time of the incident; (d) Decedent posed no threat to GUITIERREZ,

22   GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 50, inclusive; (e)

23   Decedent was hobbled despite the lack of any cause to do so; and (f) Decedent was placed in

24   the police vehicle, hobbled/hog-tied, and left to die.

25      132. As a direct and proximate result of the negligence, lack of attention,

26   carelessness, imprudence and recklessness of GUITIERREZ, GHASSERANI, CAMPBELL,

27   SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, while Decedent was under the care,

28   custody and control of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA,

SCHNEIDER, and DOES 1 to 10, inclusive, Plaintiffs and Decedent sustained a significant interference with their familial relations with one another, in that such conduct by Defendants, and each of them, resulted in Decedent's death. Such conduct caused Plaintiffs and Decedent to be significantly injured in their health, strength and activity, suffering from nervous shock, mental anguish, emotional distress and injury to their nervous system and person, all of which injuries have caused Plaintiffs and Decedent and continue to cause Plaintiffs great mental and physical suffering, all to Plaintiffs' general damages in an amount to be ascertained according to proof.

133.   As a further and proximate result of the negligence, lack of attention, carelessness, imprudence and recklessness on the part of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, during the time Decedent was under the care, custody and control of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER  and DOES 1 to 10, inclusive, Plaintiffs and Decedent incurred, medical and other expenses, the exact amount of which are not known at this time. Further, Plaintiffs will likely incur future medical and other expenses, the exact amount of which are not known at this time. Plaintiffs will ask leave of Court to amend this Complaint to allege the same when it is ascertained, or to prove same at time of trial.

134.   As a direct and proximate result of the above-described acts and/or omissions, lack of attention, carelessness, imprudence and recklessness on the part of GUITIERREZ, GHASSERANI, CAMPBELL, SALDANA, SCHNEIDER, and DOES 1 to 10, inclusive, Plaintiffs sustained, and in the future will sustain loss of income due to the death of Decedent, all to Plaintiffs' damage in an amount which is presently unascertained. Plaintiffs will ask leave of Court to amend this Complaint to allege same once it has been ascertained, or prove same at time of trial.

135.   As a further and proximate result of the above-described conduct of Defendants, and each of them, and the ensuing death of Decedent, Plaintiffs have incurred and will incur attorney's fees, the exact amount of which is not known at this time. Accordingly, Plaintiffs request attorney's fees pursuant to 42 U.S.C.A. §1988 and Civil Code

§52.1.

136.     As a further proximate result of the above-described wanton and reckless conduct of Defendants, and each of them, Plaintiff are entitled to seek exemplary and punitive damages against Defendants, and each of them, to deter and punish such future conduct.

### TENTH CAUSE OF ACTION

### Loss of Consortium

### (By Plaintiff, V. BROOKMAN, Against All Defendants)

137.     Plaintiff, V. BROOKMAN, repeats, re-alleges and incorporates by reference the preceding paragraphs of this complaint as if set forth in full.

138.     At all times during their marriage, Plaintiff, V. BROOKMAN, and Decedent enjoyed a healthy and loving relationship. As a result of the conduct of Defendants, and each of them, Plaintiff, V. BROOKMAN, has been deprived of the love, care, support, companionship, and sexual relationship provided by her spouse; i.e., Decedent, as a result of his death.

139.     As a direct and proximate result of such conduct, Plaintiff, V. BROOKMAN, has suffered a loss of consortium and continues to suffer such loss, all in an amount according to proof and in excess of the minimum jurisdictional requirements of this Court.  If the Court requires, Plaintiff, V. BROOKMAN, shall seek leave of Court to amend this Complaint with the exact amount of her damages when the same has been ascertained.

WHEREFORE, Plaintiffs  pray as follows:

### ON THE FIRST CAUSE OF ACTION:

1.     For general damages;

2.     For special damages;

3.     For costs of suit incurred herein;

4.     For punitive and/or exemplary damages; and

5.     For any other and further relief as the Court deems just and proper.

///

///

43                    Plaintiffs' Second Amended Complaint for Damages

**ON THE SECOND CAUSE OF ACTION:**

    1.    For general damages;

    2.    For special damages;

    3.    For costs of suit incurred herein;

    4.    For punitive damages; and

    5.    For any other and further relief as the Court deems just and proper.

**ON THE THIRD CAUSE OF ACTION:**

    1.    For general damages;

    2.    For special damages;

    3.    Damages up to $4,000 pursuant to <u>Civ. Code</u> §52(a);

    4.    A civil penalty of $25,000 pursuant to <u>Civ. Code</u> §52(b)(2);

    5.    For costs of suit incurred herein;

    6.    For attorney's fees;

    7.    For punitive and/or exemplary damages; and

    8.    For any other and further relief as the Court deems just and proper.

**ON THE FOURTH CAUSE OF ACTION:**

    1.    For general damages;

    2.    For special damages;

    3.    For costs of suit incurred herein;

    4.    For attorney's fees;

    5.    For punitive and/or exemplary damages; and

    6.    For any other and further relief as the Court deems just and proper.

**ON THE FIFTH CAUSE OF ACTION:**

    1.    For general damages;

    2.    For special damages;

    3.    For costs of suit incurred herein;

    4.    For attorney's fees;

    5.    For punitive and/or exemplary damages; and

| | | |
|---|---|---|
| 1 | 6. | For any other and further relief as the Court deems just and proper. |

**ON THE SIXTH CAUSE OF ACTION:**

1. For general damages;
2. For special damages;
3. For costs of suit incurred herein;
4. For punitive and/or exemplary damages; and
5. For any other and further relief as the Court deems just and proper.

**ON THE SEVENTH CAUSE OF ACTION:**

1. For general damages;
2. For special damages;
3. For costs of suit incurred herein;
4. For punitive and/or exemplary damages; and
5. For any other and further relief as the Court deems just and proper.

**ON THE EIGHTH CAUSE OF ACTION:**

1. For general damages;
2. For special damages;
3. For costs of suit incurred herein;
4. For punitive and/or exemplary damages; and
5. For any other and further relief as the Court deems just and proper.

**ON THE NINTH CAUSE OF ACTION:**

1. For general damages;
2. For special damages;
3. For costs of suit incurred herein;
4. For attorney's fees;
5. For punitive and/or exemplary damages; and
6. For any other and further relief as the Court deems just and proper.

///

///

Plaintiffs' Second Amended Complaint for Damages

**ON THE TENTH CAUSE OF ACTION:**

      1.      For general damages;

      2.      For special damages;

      3.      For costs of suit incurred herein;

      4.      For any other and further relief as the Court deems just and proper.

DATED: March 22, 2010                    OWEN, PATTERSON & OWEN

By_____

                              SUSAN A. OWEN, ESQ.
                              Attorney for Plaintiffs, VANESSA
                              BROOKMAN, individually, as successor
                              in interest to Anthony Brookman, and as
                              personal representative of the estate of
                              Anthony Brookman; and DIANA SOQUI

## DEMAND FOR JURY TRIAL

    Plaintiffs hereby demand trial by jury as to all causes of action.

DATED: March 22, 2010                    OWEN, PATTERSON & OWEN

By_____

                              SUSAN A. OWEN, ESQ.
                              Attorney for Plaintiffs, VANESSA
                              BROOKMAN, individually, as successor
                              in interest to Anthony Brookman, and as
                              personal representative of the estate of
                              Anthony Brookman; and DIANA SOQUI

# EXHIBIT 1

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

COUNTY OF LOS ANGELES

L.A. COUNTY
ASSESSOR DEPT.
2009 APR -1 PM 2:07

TIME STAMP
OFFICE USE ONLY



**INSTRUCTIONS:**
1. Read claim thoroughly.
2. Fill out claim as indicated; attach additional information if necessary.
3. Please return this original signed claim and any attachments supporting your claim. This form <u>must</u> be signed.

DELIVER OR U.S MAIL TO:
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION: CLAIMS
500 WEST TEMPLE STREET, ROOM 383, KENNETH HAHN HALL OF
ADMINISTRATION, LOS ANGELES, CA 90012

| | | |
|---|---|---|
| 1. ☐ Mr. ☐ Ms. ☒ Mrs. LAST NAME Brookman | FIRST NAME Vanessa | (213) 974-1440 |

| 10. WHY DO YOU CLAIM COUNTY IS RESPONSIBLE? |
|---|
| Refer to our Response to No. 7 herein, |

2. ADDRESS OF CLAIMANT/ATTORNEY
Jeffery A. Brightwell

Street
5000 N. Pkwy Calabasas, #219, Calabasas, California 91302  City, State   Zip Code

HOME TELEPHONE:
(   )

BUSINESS TELEPHONE:
(818  225-0770

3. CLAIMANT'S BIRTHDATE:
3-21-67

4. CLAIMANT'S SOCIAL SECURITY NUMBER
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

5. DATE AND TIME OF INCIDENT
October 27, 2008 at approximately 1447 hours

| 11. NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS) INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE): | |
|---|---|
| NAME Officer Joel Guitierrez | DEPT. |
| NAME Officer Alan Ghasserani | DEPT. |

6. WHERE DID DAMAGE OR INJURY OCCUR?

Street
Sepulveda Boulevard/Basset Street, Van Nuys, California  City, State   Zip Code

7. DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED:
Anthony Brookman died in custody with the Los Angeles Police Department. He

appeared to have numerous bruises on his face and upper torso. It appeared as

though he was beaten to death.

| 12. WITNESSES TO DAMAGE OR INJURY, LIST ALL PERSONS AND ADDRESSES OF PERSON KNOWN TO HAVE INFORMATION | |
|---|---|
| NAME Sargent Kyle Campbell | PHONE |
| NAME Officer Jose Saldana | |
| NAME Officer Daniel Schneider | PHONE |
| ADDRESS | |
| NAME | PHONE |

13. LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair estimate):   Unknown

8. WERE POLICE OR PARAMEDICS CALLED?
YES ☒   NO ☐

9. IF PHYSICIAN WAS VISITED DUE TO INJURY, INCLUDE DATE OF FIRST VISIT AND PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER:   Valley Presbyterian Hospital

DATE OF FIRST VISIT
October 27, 2008

PHYSICIAN'S NAME

PHYSICIAN'S ADDRESS

PHONE
(   )

| TOTAL DAMAGES TO DATE: | TOTAL ESTIMATED PROSPECTIVE DAMAGES: |
|---|---|
| $Unknown | $Unknown |

### THIS CLAIM MUST BE *SIGNED*
### *NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)*

## WARNING

- CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURENCE. (GOVERNMENT CODE SECTION 911.2)

- ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

- SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF REJECTION OF YOUR CLAIM TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

– IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL OF THE CAUSE OF ACTION TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

| 14. PRINT OR TYPE NAME JEFFERY A. BRIGHTWELL | DATE March 30, 2009 | 15. SIGNATURE OF CLAIMANT OR PERSON FILING ON HIS/HER BEHALF GIVING RELATIONSHIP TO CLAIMANT: |
|---|---|---|

REVISED 4/06

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

COUNTY OF LOS ANGELES



**INSTRUCTIONS:**
1. Read claim thoroughly.
2. Fill out claim as indicated; attach additional information if necessary.
3. Please return this original signed claim and any attachments supporting your claim. This form **must** be signed.

**DELIVER OR U.S. MAIL TO:**
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION: CLAIMS 500 WEST TEMPLE STREET, ROOM 383, KENNETH HAHN HALL OF ADMINISTRATION, LOS ANGELES, CA 90012

FILED
2009 APR -6 PM 4: 41
BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES



1. ☐ Mr. ☒ Ms. ☐ Mrs. LAST NAME
Souqi

FIRST NAME
Diana

(213) 974-1440

2. ADDRESS OF CLAIMANT/ATTORNEY
Jeffery A. Brightwell

Street
5000 N. Parkway Calabasas, #219

City, State
Calabasas, California

Zip Code
91302

HOME TELEPHONE:
(   )

BUSINESS TELEPHONE:
(818)  225-0770

3. CLAIMANT'S BIRTHDATE:
12-24-41

4. CLAIMANT'S SOCIAL SECURITY NUMBER
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

5. DATE AND TIME OF INCIDENT
October 27, 2008 at approximately 1447 hours

6. WHERE DID DAMAGE OR INJURY OCCUR?

Street
Sepulveda Boulevard / Basset Street, Van Nuys, California

City, State

Zip Code

7. DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED:
Anthony Brookman died in custody with the Los Angeles Police Department. He

appeared to have numerous bruises on his face and upper torso. It appeared as

though he was beaten to death.

8. WERE POLICE OR PARAMEDICS CALLED?     YES ☒   NO ☐

9. IF PHYSICIAN WAS VISITED DUE TO INJURY, INCLUDE DATE OF FIRST VISIT AND
PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER.    Valley Presbyterian Hospital

DATE OF FIRST VISIT
October 27, 2008

PHYSICIAN'S NAME

PHYSICIAN'S ADDRESS

PHONE
(   )

10. WHY DO YOU CLAIM COUNTY IS RESPONSIBLE?
Refer to our Response to No. 7 herein

11. NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS)
INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE):

NAME
Officer Joel Guiterrez

DEPT.

NAME
Officer Alan Ghasserani

DEPT.

12. WITNESSES TO DAMAGE OR INJURY. LIST ALL PERSONS AND ADDRESSES
OF PERSONS KNOWN TO HAVE INFORMATION

NAME
Sargent Kyle Campbell

PHONE

ADDRESS
Officer Jose Saldana

NAME
Officer Daniel Schneider

PHONE

ADDRESS

NAME

PHONE

13. LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair
estimate):     Unknown

TOTAL DAMAGES TO DATE:
$ Unknown

TOTAL ESTIMATED PROSPECTIVE
DAMAGES:
$ Unknown

**THIS CLAIM MUST BE *SIGNED***
*NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)*

## WARNING

- CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURENCE. (GOVERNMENT CODE SECTION 911.2)

- ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

- SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF REJECTION OF YOUR CLAIM TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

- IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL OF THE CAUSE OF ACTION TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

14. PRINT OR TYPE NAME
JEFFERY A. BRIGHTWELL

DATE
April 3, 2009

15. SIGNATURE OF CLAIMANT OR PERSON FILING ON HIS/HER BEHALF GIVING
RELATIONSHIP TO CLAIMANT

REVISED 4/06

# EXHIBIT 2



# COUNTY OF LOS ANGELES

## OFFICE OF THE COUNTY COUNSEL

648 KENNETH HAHN HALL OF ADMINISTRATION
500 WEST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012-2713

TELEPHONE
(213) 974-1913
FACSIMILE
(213) 687-8822
TDD
(213) 633-0901

ROBERT KALUNIAN
Acting County Counsel

April 3, 2009

Jeffery A. Brightwell, Esq.
5000 North Pkwy Calabasas, Suite 219
Calabasas, California 91302

Re:   Claim(s) Filed:          April 1, 2009
      File Number(s):          09-1068290*001
      Your Client(s):          Vanessa Brookman

Dear Counselor:

This letter is to inform you that the above-referenced claim which you filed with the Los Angeles County Board of Supervisors was rejected on **April 2, 2009.**

An investigation of this matter fails to indicate any involvement on the part of the County of Los Angeles, its officers, agents or employees. Accordingly, your claim was rejected on that basis.

STATE LAW REQUIRES THAT YOU BE GIVEN THE FOLLOWING "WARNING":

Subject to certain exceptions, you have only (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code Section 945.6.

HOA.594201.1

Jeffery A. Brightwell, Esq.
April 3, 2009
Page 2

This time limitation applies only to causes of action for which Government Code Sections 900 - 915.4 required you to present a claim. Other causes of action, including those arising under federal law, may have different time limitations.

Very truly yours,

ROBERT KALUNIAN
Acting County Counsel

By

BRIAN CHU
Principal Deputy County Counsel
General Litigation Division

BTC:ce

HOA.594201.1

## DECLARATION FOR SERVICE BY MAIL

STATE OF CALIFORNIA
County of Los Angeles

I am and at all times herein mentioned have been a citizen of the United States and resident of the County of Los Angeles, over the age of eighteen years and not a party to nor interested in the within action; that my business address is 648 Kenneth Hahn Hall of Administration, City of Los Angeles, County of Los Angeles, State of California 90012.

That on the _6th_ day of April 2009, I served the attached "Notice of Denial" of claim upon claimant by depositing a copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in a United States mail box in Los Angeles, California addressed as follows:

Jeffery A. Brightwell, Esq.
5000  North Pkwy Calabasas, Suite 219
Calabasas, California 91302

and that the person on whom said service was made has/resides his/her office at a place where there is a regular communication by mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _6th_ day of April 2009 at Los Angeles, California.

_Carolyn Edwards_
Signature

HOA.586118.2

**EXHIBIT 3**

1  JEFFERY A. BRIGHTWELL
   Attorney at Law, Bar No. 75925
2  5000 N. Parkway Calabasas
   Suite 219
3  Calabasas, California 91302-1400

4  Telephone:  (818) 225-0770

5  Attorney for Plaintiffs,
   VANESSA BROOKMAN

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10

11  VANESSA BROOKMAN, individually,    )

12         Applicant,                  )      APPLICATION TO PRESENT LATE
                                        )      CLAIM REGARDING DAMAGES
13         vs.                          )
                                        )      [GOV. CODE Section 911.4 Et Seq.]
14  CITY OF LOS ANGELES; LOS            )
    ANGELES POLICE DEPARTMENT;          )
15  OFFICER JOEL GUITIERREZ;            )
    OFFICER ALAN GHASSERANI;            )
16  SARGENT KYLE CAMPBELL;              )
    OFFICER JOSE SALDANA; OFFICER       )
17  DANIEL SCHNEIDER and DOES 1         )
    through 100, Inclusive              )
18                                      )
           Respondents.                 )
19  _____)

20

21         Pursuant to the provisions of Sections 911.4 et seq. of the California Government

22  Code, an application is hereby made by Claimants for leave to present a late claim,

23  presented herewith.

24                                     I.

25              CIRCUMSTANCES OF THE INCIDENT

26         On or about October 27, 2008 at approximately 8:00 a.m. Los Angeles Police

27  Officers Joel Guitierrez and Alan Ghasserani responded to a radio call concerning a

28  disturbed male (Anthony Brookman, deceased) on the corner of Sepulveda Boulevard

                          COMPLAINT FOR DAMAGES

)                                    )

1   and Basset Street.  Anthony Brookman was discovered in the Presbyterian Hospital

2   parking lot disoriented and lying on his back.  He stated he needed shelter from "the

3   earthquake".  Anthony Brookman submitted to arrest without the need for force.  The

4   officers handcuffed Mr. Brookman and requested a rescue ambulance.  The officers

5   assisted Mr. Brookman to his feet and walked him to the police car.

6       A few moments later Sargent Kyle Campbell and Officers Jose Saldana and Daniel

7   Schneider arrived at the scene.  For unknown reasons, Sargent Campbell determined the

8   use of a hobble restraint which was applied to Mr. Brookman's ankle's.  Mr. Brookman

9   was seated in the patrol car and then stopped breathing.  He was pronounced dead at

10  approximately 3:15 p.m.

11      The Los Angeles Police Department's use of hobbling restraints was not justified

12  in these circumstances and further, the use of such restraints can cause death to one

13  who is overweight as was Mr. Brookman.  Mr. Brookman was 45 years old at the time of

14  his death.

15      His wife, Vanessa Brookman has sustained serious physical and emotional injuries

16  and lost the earning capacity of her husband.

17      On April 6, 2009 claim forms were mistakenly filed with the County of Los Angeles.

18  On the Claim Form, it was clear that it was a claim against the City of Los Angeles  and

19  Los Angeles Police Department.  Three claim forms were filed.  One on behalf of

20  Vanessa Brookman, one on behalf of Anthony Brookman's sister, Sherry Hernandez, and

21  on behalf of Anthony Brookman's mother, Diane Souqui.  Attached hereto and made a

22  part hereof as Exhibit "A" are true and correct copies of the claim forms.

23                                  II.

24  **THE BOARD MAY GRANT LEAVE TO PRESENT A LATE CLAIM AS THE**

25  **APPLICATION IS PRESENTED WITHIN A REASONABLE TIME**

26  Government Code §911.4 allows for a late claim to be presented within a

27  reasonable time, not to exceed one year after the accrual of the cause of action.  The

28  accrual of the cause of action in the subject incident was October 27, 2008, and the late

claim, therefore, Is being presented within one year of the accrual of the cause of action, and within a reasonable time.

### III.

### THE APPLICATION SHOULD BE GRANTED BASED ON GOV. CODE §911.6(b)(1) SINCE THE FAILURE TO TIMELY PRESENT THE CLAIM WAS THROUGH MISTAKE, INADVERTENCE, AND EXCUSABLE NEGLECT

Government Code §911.6(b) provides that:

"The board shall grant the application where one or more of the following is applicable:

(1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect and the public entity was not prejudiced in its defense of the claim by the failure to present the claim within the time specified in Section 911.2..."

The use of the word "shall" indicates that the Board has no discretion, and must grant the Application if the failure to timely present a claim was through mistake, inadvertence, surprise or excusable neglect and no prejudice was caused. The showing required of a claimant seeking relief in filing a late claim on this grounds is the same as that required by Code of Civil Procedure §473 for relieving a party from default judgment. Viles v. State of California (1967) 66 Cal.2d 24, 29. Because the law favors the adjudication of disputes on the merits, courts liberally construe the statute providing for discretionary relief from a judgment entered as result of party's mistake, inadvertence, surprise, or excusable neglect in favor of relief. Arambula v. Union Carbide Corp. (2005) 128 Cal.App.4th 333.

For the following reasons, in this case, the failure to timely present a claim was through mistake, inadvertence and excusable neglect.

Applicant, Vanessa Brookman, properly filled out the Claim form alleging "Anthony Brookman died in the custody with the Los Angeles Police Department", but filled the

wrong form (the City and County forms are similar in content), but it was clear from the information provided it was a City claim. This form was inadvertently filed with the County of Los Angeles, not the City of Los Angeles.

The first part of April, 2009, counsel herein, Jeffery A. Brightwell was preparing for a criminal trial in San Diego County which actually began on April 22, 2009. That trial lasted for approximately one week. In reviewing the file in preparation of filing the Complaint herein, it was not discovered until August 26, 2009 that the County had been served instead of the City.

The same policy of **liberal relief** from default pursuant to C.C.P. §473 is followed when relieving a party from the Gov. Code claim filing requirements. Viles v. California, *supra*, 66 Cal.2d at p. 32; Nilson v. Los Angeles (1987) Cal.App.2d 976, 979; Ebersol v. Cowan (1983) 35 Cal.3d 427, 435; Moore v. Cal. Comm. College Dist. (1986) 157 Cal.App.3d 715, 721; Bettencourt v. Los Rios Community College Dist. (1986) 42 Cal.3d 270, 275. In Viles, *supra*, the Court noted the "well-recognized policy of the law to liberally construe remedial statutes designed to protect persons within their purview, and the modern trend of judicial decisions in favor of granting relief unless absolutely forbidden by statute." *Id.*, at p. 32.

'Excusable neglect' is generally defined as an error a reasonably prudent person under the same or similar circumstances might have made. Ambrose v. Michelin North America, Inc., *supra*, 134 Cal.App.4th 1350.

In this case, Applicant understood that the Claim for Damages must be filed within 180 days of the incident. It was just mistakenly filed with the County of Los Angeles instead of the City of Los Angeles. Any reasonably prudent person could have easily made the same mistake as Applicant did.

In Bettencourt, *supra*, 42 Cal.3d 270, the plaintiffs brought an action for the wrongful death of their son on a city college field trip. Plaintiffs' counsel, believing that the college's employees worked for the state, filed a claim with the state, and did not discover his mistake until after the 100-day deadline of Gov. Code, §911.2 (now six

)                                        )

1   months.)  The court found the neglect excusable, even though counsel's declaration did
2   not provide the reason why he mistook the identity of one public entity for another, nor
3   how he finally discovered the error, concluding that these omissions alone did not provide
4   a proper basis for denying relief.  *Id.* at p. 280.  The court noted that any doubts in
5   counsel's declaration had to be resolved in favor of granting relief.  *Id.*
6       In *Kaslavage v. West Kern County Water Dist.* (1978), 84 Cal.App.3d, 527, the
7   attorney hired an investigator to obtain information about an accident that occurred when
8   plaintiff dove from a pipe into a canal.  Apparently, both the investigator and the attorney
9   assumed that the water district that owned the canal also owned the pipe.  Consequently,
10  counsel presented a timely claim to the district that owned the canal.  He did not learn
11  that the pipe was owned by a different water district until after the 100-day period had
12  elapsed.  A phone call to one of the owners of the land or the owner of the canal would
13  have revealed the true owner of the pipe.  However, counsel neglected to make such a
14  call.  Although the Court of Appeal characterized counsel's error as "grave," it found
15  excusable neglect and reversed the trial court's denial of relief.  *Id.*, at p. 529.
16      *Bettencourt* and *Kaslavage* involved the same excusable neglect involved in this
17  case, namely, filing a timely claim against the wrong entity.  The grounds for granting the
18  Application are even more compelling in this case, in that the Los Angeles Police
19  Department (The City) were properly identified.
20      In *Flores v. Board of Supervisors* (1970) 13 Cal.App.3d 480, the attorney was
21  aware of §911.2's 100-day limit for filing a claim with a public entity.  Nevertheless, he
22  did not file the claim until 123 days after the cause of action had accrued.  His
23  explanation was simply that he had failed to open a file which would have reminded him
24  of the 100-day deadline.  The Court of Appeal found that the trial court abused its
25  discretion in failing to excuse the attorney's neglect.  The attorney's mistake in *Flores*
26  was more culpable than Applicant's mistake here.  The attorney in *Flores* knew exactly
27  what he had to do to protect his client's interests and when he had to do it.  Nevertheless,
28  he failed to act in a timely manner. Contrast this with Applicant's conduct in this case,

COMPLAINT FOR DAMAGES

1    who moved promptly in seeking relief, albeit, from the wrong entity.

2        In determining whether an attorney's error constitutes excusable neglect, the

3    courts also consider the attorney's overall diligence or lack thereof in addition to

4    examining the attorney's error.  Bettencourt, supra, 42 Cal.3d 270 at p. 278.  Here,

5    although Applicant had made an erroneous assumption, which led him to sue the wrong

6    public entity, he was otherwise diligent.

7        The claim-filing requirement of the Government Claims Act serves several

8    purposes: (1) provide the public entity with sufficient information to allow it to make a

9    thorough investigation of the matter; (2) facilitate settlement of meritorious claims; (3)

10    enable the public entity to engage in fiscal planning; and (4) avoid similar liability in the

11    future.  Westcon Const. Corp. v. County of Sacramento (2007) 152 Cal.App.4th 183.  It

12    gives public entity prompt notice of a claim so it can investigate strengths and

13    weaknesses of claim while evidence is still fresh and witnesses are available, it affords

14    opportunity for amicable adjustment, and it informs public entity of potential liability so it

15    can better prepare for upcoming fiscal year.  Renteria v. Juvenile Justice, Dept. of

16    Corrections and Rehabilitation (2006) 135 Cal.App.4th 903.  The purpose of requiring the

17    filing of claims, and of prescribing time limit frames in which such claims may be filed, is

18    to give public entity the opportunity to investigate the facts while evidence is fresh and

19    witnesses are available, as well as to settle meritorious cases without the need of

20    litigation; furthermore, prompt presentation of claim for money permits recipient public

21    entity to make appropriate physical planning decision.  Nelson v. Superior Court (2001)

22    89 Cal.App.4th 565, Christopher P. v. Mojave Unified School Dist. (1993) 19 Cal.App.4th

23    165, City of Ontario v. Superior Court (1993) 12 Cal.App.4th 894.

24        In this case, since the late claim is being presented within a reasonable time, not

25    exceeding one (1) year, all of the above mentioned purposes are met.  Therefore, no real

26    prejudice will be caused to Respondents if the Application is granted.  The prejudice to

27    Applicant, however, who sustained severe damage, will be substantial, as she will not be

28    able to find redress for her severe damages.

COMPLAINT FOR DAMAGES

IV.

<u>CONCLUSION</u>

For all reason stated above, the Application should be granted and Applicant should be allowed to present the attached late claims.

DATED: August 31, 2009

JEFFERY A. BRIGHTWELL, Attorney for, Plaintiff, VANESSA BROOKMAN

COMPLAINT FOR DAMAGES

EXHIBIT "A"

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

COUNTY OF LOS ANGELES



**INSTRUCTIONS:**
1. Read claim thoroughly.
2. Fill out claim as indicated; attach additional information if necessary.
3. Please return this original signed claim and any attachments supporting your claim. This form must be signed.

DELIVER OR U.S.MAIL TO:
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION: CLAIMS
500 WEST TEMPLE STREET, ROOM 383, KENNETH HAHN HALL OF
ADMINISTRATION, LOS ANGELES, CA 90012

TIME STAMP
CENTRAL FILE UNIT ONLY

| Mr. Ms. ☒ Mrs. | LAST NAME | FIRST NAME | (213) 974-1440 |
|---|---|---|---|
| | Brookman | Vanessa | 14. WHAT OC YOU CLAIM COUNTY IS RESPONSIBLE? Refer to our Response to No. 7 herein. |

2. ADDRESS OF CLAIMANT, ATTORNEY:
Jeffery A. Brightwell

Street
5000 N.Pkwy Calabasas, #219, Calabasas, California 91302    City, State    Zip Code

HOME TELEPHONE:
( )

BUSINESS TELEPHONE:
(818) 225-0770

3. CLAIMANT'S BIRTHDATE:
3-21-67

4. CLAIMANT'S SOCIAL SECURITY NUMBER
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

5. DATE AND TIME OF INCIDENT
October 27, 2008 at approximately 1447 hours

11. NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS)
INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE):

| NAME | DEPT. |
|---|---|
| Officer Joel Gutiierrez | |
| NAME | DEPT. |
| Officer Alan Ghasserani | |

6. WHERE DID DAMAGE OR INJURY OCCUR?

Street
Sepulveda Boulevard/Basset Street, Van Nuys, California    City, State    Zip Code

12. WITH NAMES OF DAMAGE OR INJURY AND ALL PERSONS AND ADDRESSES
OF PERSONS KNOWN TO HAVE INFORMATION:

| NAME | PHONE |
|---|---|
| Sargent Kyle Campbell | |
| ADDRESS | |
| Officer Jose Saldana | |
| NAME | PHONE |
| Officer Daniel Schneider | |
| ADDRESS | |
| NAME | PHONE |

7. DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED:

Anthony Brookman died in custody with the Los Angeles Police Department. He
appeared to have numerous bruises on his face and upper torso. It appeared as
though he was beaten to death.

13. LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair
estimate): Unknown

8. WERE POLICE OR PARAMEDICS CALLED?

YES ☒    NO ☐

9. IF PHYSICIAN WAS VISITED DUE TO INJURY, INCLUDE DATE OF FIRST VISIT AND
PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER:    Valley Presbyterian Hospital

DATE OF FIRST VISIT
October 27, 2008

PHYSICIAN'S NAME

PHYSICIAN'S ADDRESS

PHONE
( )

| TOTAL DAMAGES TO DATE: | TOTAL ESTIMATED PROSPECTIVE DAMAGES: |
|---|---|
| $Unknown | $Unknown |

## THIS CLAIM MUST BE *SIGNED*
### NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)

## WARNING

- CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

- ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

- SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF REJECTION OF YOUR CLAIM TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

- IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL OF THE CAUSE OF ACTION TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

PRINT OR TYPE NAME
Jeffery A. Brightwell

DATE
March 30, 2009

15. SIGNATURE OF CLAIMANT OR PERSON FILING ON HIS/HER BEHALF GIVING
RELATIONSHIP TO CLAIMANT.

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

COUNTY OF LOS ANGELES



**INSTRUCTIONS:**
1. Read claim thoroughly.
2. Fill out claim as indicated; attach additional information if necessary.
3. Please return this original signed claim and any attachments supporting your claim. This form must be signed.

DELIVER OR U.S. MAIL TO:
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION: CLAIMS
500 WEST TEMPLE STREET, ROOM 383, KENNETH HAHN HALL OF
ADMINISTRATION, LOS ANGELES, CA 90012

**FILED**

2009 APR -6 PM 2:41

BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES

| ☐ Mr. ☒ Ms. ☐ Mrs. LAST NAME Hernandez | FIRST NAME Sherry | 10. WHY DO YOU CLAIM COUNTY IS RESPONSIBLE? Refer to our Response to No. 7 herein |
|---|---|---|

2. ADDRESS OF CLAIMANT / ATTORNEY
Jeffery A. Brightwell

| Street 3000 N. Parkway Calabasas, #219 | City, State Calabasas, California | Zip Code 91302 |
|---|---|---|

HOME TELEPHONE
(   )

BUSINESS TELEPHONE
(818) 225-0770

(213) 974-1449

3. CLAIMANT'S BIRTHDATE:
1-31-59

4. CLAIMANT'S SOCIAL SECURITY NUMBER
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

11. NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS)
INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE):

5. DATE AND TIME OF INCIDENT:
October 27, 2008 at approximately 1447 hours

NAME Officer Joel Guiterrez     DEPT.

NAME Officer Alan Ghasserani     DEPT.

6. WHERE DID DAMAGE OR INJURY OCCUR?

| Street Sepulveda Boulevard / Basset Street, Van Nuys, California | City, State | Zip Code |
|---|---|---|

11a. WHAT ARE THE NAMES OF WITNESSES OR OTHER PERSONS WHO YOU BELIEVE
OR REASON KNOWN TO HAVE INFORMATION?

7. DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED:
Anthony Brookman died in custody with the Los Angeles Police Department. He appeared to have numerous bruises on his face and upper torso. It appeared as though he was beaten to death.

NAME Sargent Kyle Campbell     PHONE

ADDRESS Officer Jose Saldana

NAME Officer Daniel Schneider     PHONE

ADDRESS

12. LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair estimates): Unknown

8. WERE POLICE OR PARAMEDICS CALLED?

YES ☒     NO ☐

9. IF PHYSICIAN WAS VISITED DUE TO INJURY, INCLUDE DATE OF FIRST VISIT AND
PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER: Valley Presbyterian Hospital

DATE OF FIRST VISIT
October 27, 2008

PHYSICIAN'S NAME

PHYSICIAN'S ADDRESS

PHONE
(   )

TOTAL DAMAGES TO DATE:
$Unknown

TOTAL ESTIMATED PROSPECTIVE DAMAGES:
$Unknown

## THIS CLAIM MUST BE SIGNED
### NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)

## WARNING

· CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

· ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

· SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF REJECTION OF YOUR CLAIM TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

· IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL OF THE CAUSE OF ACTION TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

| PRINT OR TYPE NAME Jeffery A. BRIGHTWELL | DATE April 1, 2009 | 13. SIGNATURE OF CLAIMANT OR PERSON FILING ON HIS/HER BEHALF GIVING RELATIONSHIP TO CLAIMANT |
|---|---|---|

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY



COUNTY OF LOS ANGELES

INSTRUCTIONS:
1. Read claim thoroughly.
2. Fill out claim as indicated; attach additional information if necessary.
3. Please return this original signed claim and any attachments supporting your claim. This form must be signed.

DELIVER OR U.S. MAIL TO:
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION: CLAIMS
500 WEST TEMPLE STREET, ROOM 383, KENNETH HAHN HALL OF
ADMINISTRATION, LOS ANGELES, CA 90012



FILED

2009 APR -6 PM 2: 41

BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES

| □ Mr. □ Ms.☒ □ Mrs. LAST NAME<br>Scugi | FIRST NAME<br>Ciana | 12 (310) 974-1440<br>TO WHOM DO YOU CLAIM COUNTY IS RESPONSIBLE?<br>Refer to our Response to No. 7 herein |
| ADDRESS OF CLAIMANT / ATTORNEY<br>Jeffery A. Brightwell | | |
| Street<br>5000 N. Parkway Calabasas, #219 | City, State<br>Calabasas, California | Zip Code<br>91302 |
| PHONE TELEPHONE<br>(  ) | BUSINESS TELEPHONE<br>(818   225-0770 | |
| 3. CLAIMANT'S BIRTHDATE<br>12-22-41 | 4. CLAIMANT'S SOCIAL SECURITY NUMBER<br>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 | 11. NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS)<br>INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE): |
| 5. DATE AND TIME OF INCIDENT<br>October 27, 2008 at approximately 1447 hours | | NAME<br>Officer Joel Gutierrez | DEPT. |
| | | NAME<br>Officer Alan Ghasserani | DEPT. |
| 6. WHERE DID DAMAGE OR INJURY OCCUR? | | 12. NAMES OF WITNESSES TO DAMAGE OR INJURY, AND NAMES AND ADDRESSES<br>OF PERSONS KNOWN TO HAVE INFORMATION | |
| Street<br>Sepulveda Boulevard / Basset Street, Van Nuys, California | City, State<br> | Zip Code | NAME<br>Sargent Kyle Campbell | PHONE |
| 7. DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED:<br>Anthony Brookman died in custody with the Los Angeles Police Department. He | | ADDRESS<br>Officer Jose Saldana | |
| appeared to have numerous bruises on his face and upper torso. It appeared as | | NAME<br>Officer Daniel Schneider | PHONE |
| though he was beaten to death. | | ADDRESS | |
| | | NAME | PHONE |
| | | 13. LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair<br>estimates) Unknown | |
| 8. WERE POLICE OR PARAMEDICS CALLED?<br>YES ☒   NO □ | | | |
| 9. IF PHYSICIAN WAS VISITED DUE TO INJURY, INCLUDE DATE OF FIRST VISIT AND<br>PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER:<br>Valley Presbyterian Hospital | | | |
| 9.a IF FIRST VISIT<br>October 27, 2008 | PHYSICIAN'S NAME | TOTAL DAMAGES TO DATE:<br>$ Unknown | TOTAL ESTIMATED PROSPECTIVE<br>DAMAGES:<br>$Unknown |
| PHYSICIAN'S ADDRESS | PHONE<br>(  ) | | |

## THIS CLAIM MUST BE SIGNED
### NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)

## WARNING

CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURENCE. (GOVERNMENT CODE SECTION 911.2)

ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF REJECTION OF YOUR CLAIM TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL OF THE CAUSE OF ACTION TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

| 14. OR TYPE NAME<br>JERY A. BRIGHTWELL | DATE<br>April 3, 2009 | 15. SIGNATURE OF CLAIMANT OR PERSON FILING ON HIS/HER BEHALF GIVING<br>RELATIONSHIP TO CLAIMANT |

FORM CODT 100 A (Rev. 7-01)

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

RESERVE FOR FILING STAMP
CLAIM NO. _____

### INSTRUCTIONS

1. Claims for death, injury to person or to personal property must be filed not later than six months after the occurrence.  (Gov. Code Sec. 911.2).
2. Claims for damages relating to any other type of occurrence must be filed not later than one year after the occurrence.  (Gov. Code Sec. 911.2).
3. Read entire claim before filing.  Claim can be mailed or filed in person.  No faxes accepted.
4. See Page 3 for diagram upon which to locate place of accident.
5. This claim form must be signed on Page 3 at bottom.
6. Attach separate sheets, if necessary, to give full details.  SIGN EACH SHEET.
7. Fill out in duplicate.  ONE COPY TO BE RETAINED BY CLAIMANT.
8. Claim must be filed with CITY CLERK, (Gov. Code Sec. 915A)
   200 NORTH SPRING STREET, ROOM 395, CITY HALL, LOS ANGELES, CA 90012

TO: CITY OF LOS ANGELES

| Name of Claimant | | Age of Claimant |
|---|---|---|
| Vanessa Brookman | | 42 |

| Home address of Claimant | City, State and Zip Code | Home Telephone Number |
|---|---|---|
| | | |

| Business address of Claimant | City, State and Zip Code | Business Telephone Number |
|---|---|---|
| c/o Jeffery A Brightwell, Esq. 5000 N Pkwy Calabasas, #219 Calabasas CA | | (818) 225-0770 |

Give address to which you desire notices or communications to be sent regarding this claim:
5000 N. Parkway Calabasas, #219, Calabasas, California 91302

How did DAMAGE or INJURY occur?  Please include as much detail as possible.
Anthony Brookman died in the custody of the Los Angeles Police Department.  He appeared to have a number of bruises on his face and upper torso.  It appears as though he was beaten to death.  Decedent died in the custody of the Los Angeles Police Department.  Initial filing of Claim on April 6, 2009, Copy attached.

When did DAMAGE or INJURY occur?  Please include the date and time of the damage or injury.
October 27, 2008 at approximately 1447 hours

Where did DAMAGE or INJURY occur?  Please describe fully, and locate on the diagram on the reverse side of this sheet.
Where appropriate, please give street names and addresses or measurements from specific landmarks:
Sepulveda Boulevard / Basset Street, Van Nuys, California

What particular ACT or OMISSION do you claim caused the injury or damage?  Please give names of City employees causing the injury or damage and identify any vehicles involved by license plate number, if known.
died in the custody of the Los Angeles Police Department

Please list names and address of Witnesses, Doctors and Hospitals:
Officer Joel Guitierrez, Officer Alan Ghasserani, Sargent Kyle Campbell, Officer Jose Saldana, Officer Daniel Schneider, LAPD Investigators

SEE PAGE 3                                THIS CLAIM MUST BE SIGNED AT BOTTOM

What DAMAGE or INJURIES do you claim resulted?  Please give full extent of injuries or damages claimed:
Decedent Anthony Brookman died in custody of Los Angeles Police Department

What is the AMOUNT of your claim?  Please itemize your damages:
Unknown

If you have received any insurance payments, please give the names of the insurance companies:
Unknown

For all accident claims please place on the following diagram the names of the streets where the accident occurred and the nearest cross-streets; indicate the place of the accident by an "X" and by showing the nearest address and distances to street corners.  Please indicate where North is on the diagram.

Note:  if the diagram does not fit the situation, please attach your own diagram.



| Signature of Claimant or person filing on claimant's behalf giving relationship to claimant: | Print Name: | Date: |
|---|---|---|
| | Jeffery A. Brightwell | 8/27/09 |

PAGE 3

FORM CONT. 100-A (Rev. 3-01)

## CLAIM FOR DAMAGES
### TO PERSON OR PROPERTY

RESERVE FOR FILING STAMP

CLAIM NO. _____

### INSTRUCTIONS

1. Claims for death, injury to person or to personal property must be filed not later than six months after the occurrence. (Gov. Code Sec. 911.2).
2. Claims for damages relating to any other type of occurrence must be filed not later than one year after the occurrence. (Gov. Code Sec. 911.2).
3. Read entire claim before filing. Claim can be mailed or filed in person. No faxes accepted.
4. See Page 3 for diagram upon which to locate place of accident.
5. This claim form must be signed on Page 3 at bottom.
6. Attach separate sheets, if necessary, to give full details. SIGN EACH SHEET.
7. Fill out in duplicate. ONE COPY TO BE RETAINED BY CLAIMANT.
8. Claim must be filed with CITY CLERK, (Gov. Code Sec. 915A)
   200 NORTH SPRING STREET, ROOM 395, CITY HALL, LOS ANGELES, CA 90012

TO: CITY OF LOS ANGELES

Name of Claimant

Sherry Hernandez

Age of Claimant

50

Home address of Claimant          City, State and Zip Code

Home Telephone Number

Business address of Claimant          City, State and Zip Code

c/o Jeffery A Brightwell, Esq. 5000 N Pkwy Calabasas, #219 Calabasas CA

Business Telephone Number
(818) 225-0770

Give address to which you desire notices or communications to be sent regarding this claim:

5000 N. Parkway Calabasas, #219, Calabasas, California 91302

How did DAMAGE or INJURY occur? Please include as much detail as possible.

Anthony Brookman died in the custody of the Los Angeles Police Department. He appeared to have a number of bruises on his face and upper torso. It appears as though he was beaten to death. Decedent died in the custody of the Los Angeles Police Department. Initial filing of Claim on April 6, 2009, Copy attached.

When did DAMAGE or INJURY occur? Please include the date and time of the damage or injury.

October 27, 2008 at approximately 1447 hours

Where did DAMAGE or INJURY occur? Please describe fully, and locate on the diagram on the reverse side of this sheet. Where appropriate, please give street names and addresses or measurements from specific landmarks:

Sepulveda Boulevard / Basset Street, Van Nuys, California

What particular ACT or OMISSION do you claim caused the injury or damage? Please give names of City employees causing the injury or damage and identify any vehicles involved by license plate number, if known.

died in the cutosdy of the Los Angeles Police Department

Please list names and address of Witnesses, Doctors and Hospitals:

Officer Joel Guitierrez, Officer Alan Ghasserani, Sargent Kyle Campbell, Officer Jose Saldana, Officer Daniel Shneider, LAPD Investigators

SEE PAGE 3

PAGE 4

THIS CLAIM MUST BE SIGNED AT BOTTOM

What DAMAGE or INJURIES do you claim resulted?  Please give full extent of injuries or damages claimed:
Decedent Anthony Brookman died in custody of Los Angeles Police Department

What is the AMOUNT of your claim?  Please itemize your damages:
Unknown

If you have received any insurance payments, please give the names of the insurance companies:
Unknown

For all accident claims please place on the following diagram the names of the streets where the accident occurred and the nearest cross-streets; indicate the place of the accident by an "X" and by showing the nearest address and distances to street corners.  Please indicate where North is on the diagram.

Note:  if the diagram does not fit the situation, please attach your own diagram.

SIDEWALK

CURB

PARKWAY

SIDEWALK

CURB

| ¡nature of Claimant or person filing claimant's behalf giving relationship :laimant: | Print Name: | Date: |
|---|---|---|
| | Jeffery A. Brightwell | 8/27/09 |

PAGE 3

}                                    }

FORM CONT. 100-A (Rev. 7-01)

# CLAIM FOR DAMAGES
## TO PERSON OR PROPERTY

RESERVE FOR FILING STAMP
CLAIM NO. _____

### INSTRUCTIONS

1. Claims for death, injury to person or to personal property must be filed not later than six months after the occurrence. (Gov. Code Sec. 911.2).
2. Claims for damages relating to any other type of occurrence must be filed not later than one year after the occurrence. (Gov. Code Sec. 911.2).
3. Read entire claim before filing. Claim can be mailed or filed in person. No faxes accepted.
4. See Page 3 for diagram upon which to locate place of accident.
5. This claim form must be signed on Page 3 at bottom.
6. Attach separate sheets, if necessary, to give full details. SIGN EACH SHEET.
7. Fill out in duplicate. ONE COPY TO BE RETAINED BY CLAIMANT.
8. Claim must be filed with CITY CLERK, (Gov. Code Sec. 915A).
   200 NORTH SPRING STREET, ROOM 395, CITY HALL, LOS ANGELES, CA 90012

TO: CITY OF LOS ANGELES

| | | |
|---|---|---|
| Name of Claimant | | |
| Diana Souqi | | Age of Claimant |
| | | 68 |
| Home address of Claimant | City, State and Zip Code | Home Telephone Number |
| Business address of Claimant | City, State and Zip Code | Business Telephone Number |
| c/o Jeffery A Brightwell, Esq. 5000 N Pkwy Calabasas, #219 Calabasas CA | | (818) 225-0770 |

Give address to which you desire notices or communications to be sent regarding this claim:
5000 N. Parkway Calabasas, #219, Calabasas, California 91302

How did DAMAGE or INJURY occur? Please include as much detail as possible.
Anthony Brookman died in the custody of the Los Angeles Police Department. He appeared to have a number of bruises on his face and upper torso. It appears as though he was beaten to death. Decedent died in the custody of the Los Angeles Police Department. Initial filing of Claim on April 6, 2009, Copy attached.

When did DAMAGE or INJURY occur? Please include the date and time of the damage or injury.
October 27, 2008 at approximately 1447 hours

Where did DAMAGE or INJURY occur? Please describe fully, and locate on the diagram on the reverse side of this sheet. Where appropriate, please give street names and addresses or measurements from specific landmarks:
Sepulveda Boulevard / Basset Street, Van Nuys, California

What particular ACT or OMISSION do you claim caused the injury or damage? Please give names of City employees causing the injury or damage and identify any vehicles involved by license plate number, if known.
Died in the custody of the Los Angeles Police Department

Please list names and address of Witnesses, Doctors and Hospitals:
Officer Joel Guitierrez, Officer Alan Ghasserani, Sargent Kyle Campbell, Officer Jose Saldana, Officer Daniel Schneider, LAPD Investigators

SEE PAGE 3                                    THIS CLAIM MUST BE SIGNED AT BOTTOM

PAGE 1

What DAMAGE or INJURIES do you claim resulted?  Please give full extent of injuries or damages claimed:
Decedent Anthony Brookman died in custody of Los Angeles Police Department

What is the AMOUNT of your claim?  Please itemize your damages:
Unknown

If you have received any insurance payments, please give the names of the insurance companies:
Unknown

For all accident claims please place on the following diagram the names of the streets where the accident occurred and the nearest cross-streets; indicate the place of the accident by an "X" and by showing the nearest address and distances to street corners.  Please indicate where North is on the diagram.

Note:  if the diagram does not fit the situation, please attach your own diagram.



| gnature of Claimant or person filing claimant's behalf giving relationship claimant: | Print Name: | Date: |
|---|---|---|
| | Jeffery A. Brightwell | 8/27/09 |

# EXHIBIT 4

FROM :LAW OFFICES          FAX NO. :818 225 1683          Sep. 23 2009 12:51PM P1



City Hall East
200 N. Main Street
Room 800
Los Angeles, CA 90012

(213) 978-8100 Tel
(213) 978-8312 Fax
CTrutanich@lacity.org
www.lacity.org/atty

## CARMEN A. TRUTANICH
City Attorney

September 11, 2009

Jeffery A. Brightwell
Attorney at Law
5000 N. Parkway Calabasas, #219
Calabasas, CA 91302

RE:   Claim No.:       C10-0884
      Application For:  Vanessa Brookman

Dear Mr. Brightwell:

Please be advised that after careful review and evaluation of your Application for Leave to Present a Late Claim, the Application has been denied.

### ***WARNING***

"If you wish to file a state court action on this matter, you must first petition the appropriate court for an order relieving you from the provisions of Government Code Section 945.4 (Claims presentation requirement). See Government Code Section 946.6. Such petition must be filed with the court within six (6) months from the date your application for leave to present a late claim was denied.

"You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

Very truly yours,

*Thomas Wong*

THOMAS WONG
Chief Investigator

TW:tm
Telephone: (213) 978-7071
Enclosure

*My understanding
this will filed
due to accidentally
filing against the
County instead of
the City*

# EXHIBIT 5

1  JEFFERY A. BRIGHTWELL
   Attorney at Law, Bar No. 75925
2  5000 N. Parkway Calabasas
   Suite 219
3  Calabasas, California 91302-1400

4  Telephone: (818) 225-0770

5  Attorney for Petitioners,
   VANESSA BROOKMAN; SHERRY
6  HERNANDEZ; DIANA SOUQI

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF LOS ANGELES

10

11  VANESSA BROOKMAN; SHERRY        )   CASE NO.: LS019236
    HERNANDEZ; DIANA SOUQI          )
12                                  )   PETITION FOR ORDER PERMITTING
          Petitioners,              )   LATE CLAIM AGAINST
13                                  )   GOVERNMENT ENTITY
          vs.                       )
14                                  )   [GOV. CODE §911.4 ET SEQ.]
    CITY OF LOS ANGELES; LOS        )
15  ANGELES POLICE DEPARTMENT;      )
    OFFICER JOEL GUITIERREZ;        )   DATE:    December 2, 2009
16  OFFICER ALAN GHASSERANI;        )   TIME:    8:30 a.m.
    SARGENT KYLE CAMPBELL;          )   DEPT:    D
17  OFFICER JOSE SALDANA; OFFICER   )
    DANIEL SCHNEIDER and DOES 1     )   Judge:
18  through 100, Inclusive          )
                                    )
19        Respondents.              )
                                    )
20  ──────────────────────────────

21       Pursuant to the provisions of Sections 911.4 et seq. of the California Government

22  Code, an application is hereby made by Petitioner for leave to present a late claim,

23  presented herewith.

24                                  I.

25                  CIRCUMSTANCES OF THE INCIDENT

26       On or about October 27, 2008, Petitioners' husband, brother, son (Anthony

27  Brookman) was near the corner of Sepulveda Boulevard and Bassett in the City of Van

28  Nuys, California. Decedent was disoriented and laying on his back requesting he needed

1    shelter from "the earthquake". Respondents arrested him. While he was in custody he
2    was hobbled, even though he was arrested without the need for force. The officers
3    placed him in a sitting position and it is believed he suffocated as a result of that position.
4         The force used by the Respondent was unnecessary and they knew or should have
5    known that hobbling an overweight suspect can cause him to suffocate. It is believed this
6    is against Los Angeles Police Department policy.
7         Petitioners allege that the Respondents negligently  and carelessly employed,
8    trained, retained, supervised, assigned, controlled and negligently and carelessly failed
9    to adequately or properly supervise these officers and permitted the hobbling of the
10   decedent which caused his death. The Respondents should have properly cared for
11   decedent while he was in their custody and was unjustified in their actions and brutality
12   towards decedent and should not have hobbled him which resulted in his death.
13        Further the Respondents negligently created and placed Decedent, who was in
14   their custody, in an unreasonable and unjustified manner and means of controlling
15   decedent further improperly and without authorization used hobble restraints, all of which
16   resulted in the death of decedent. The Respondents who took control over the incident
17   with decedent, the Respondents, and each of them, were persons obligated to serve and
18   protect members of the public from harm, including those persons taken into custody by
19   the City of Los Angeles and the Los Angeles Police Department had a duty to protect
20   Decedent from harm and to not place decedent in a more dangerous position than he
21   would have been otherwise. The Respondents, and each of them, failed to exercise
22   reasonable care, breached their duty to decedent and Respondent, thereby causing the
23   injuries alleged herein to Petitioner and causing the death of decedent while in the Los
24   Angeles Police Department's custody.
25        It is further alleged that the Respondents entered into a special relationship with
26   Decedent when they undertook and placed him in custody knowing he was disoriented,
27   confused, promising assistance, voluntarily assuming a protective duty for the safety of
28   decedent. As a result of the orders and/or conduct of the police officers, as well as their

1   promised assistance, decedent relied to his detriment that the police officers were

2   safeguarding him.  As a result of the negligent action of the police officers in not properly

3   assessing decedent's condition, exposed him to an unreasonable risk of harm, resulting

4   in his death while in the custody of the Los Angeles Police Department.

5          It was reasonably foreseeable that this type of injury, damages and death would

6   be sustained by decedent and Petitioner as a result of the consequence of the above

7   described acts and omissions.

8          As a direct and proximate result of the negligence, lack of attention, carelessness,

9   imprudence and recklessness of the Respondents while decedent was in the care and

10  custody of the Los Angeles Police Department, Petitioner and decedent were injured in

11  health, strength and activity, suffering from nervous shock, mental anguish, emotional

12  distress and injury to their nervous system and person, all of which injuries have caused

13  and continue to cause Respondent great mental, physical suffering, all to Respondent's

14  general damages in an amount to be ascertained according to proof.

15         As a direct and legal result of the action of Respondents, and each of them, as set

16  forth herein, Petitioner sustained severe physical and emotional injuries, incurred medical

17  expense and loss of earnings.

18                                        II.

19            **THE FACTS UNDERLYING THE LATE FILING**

20         Petitioners timely filed their claims naming the Los Angeles Police Department and

21  each of the police officers correctly on April 6, 2009 but inadvertently used the County

22  form and filed with the County address instead of the City's address.   When the

23  Petitioners were preparing the Complaint in this matter, they realized the error,

24  immediately filed correctly with the City and filed an Application to Present a Late Claim

25  with the City which was subsequently rejected.   The relief requested is the mistake

26  Petitioners made in filing at the wrong address using the County form which contained

27  identically the same information as does the City form.

28  // // //

III.

## THE BOARD MAY GRANT LEAVE TO PRESENT A LATE CLAIM AS THE
## APPLICATION IS PRESENTED WITHIN A REASONABLE TIME

Government Code §911.4 allows for a late claim to be presented within a reasonable time, not to exceed one year after the accrual of the cause of action. The accrual of the cause of action in the subject incident was October 27, 2008, and the late claim, therefore, is being presented within one year of the accrual of the cause of action, and within a reasonable time. Petitioners herein filed Application to Present Late Claim with the City on September 1, 2009 which was subsequently rejected on September 11, 2009.

IV.

## THE APPLICATION SHOULD BE GRANTED BASED ON  GOV. CODE §911.6(b)(1)
## SINCE THE FAILURE TO TIMELY PRESENT THE CLAIM WAS THROUGH
## MISTAKE, INADVERTENCE, AND EXCUSABLE NEGLECT

Government Code §911.6(b) provides that:

"The board shall grant the application where one or more of the following is applicable:

(1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect and the public entity was not prejudiced in its defense of the claim by the failure to present the claim within the time specified in Section 911.2..."

The use of the word "shall" indicates that the Board has no discretion, and must grant the Application if the failure to timely present a claim was through mistake, inadvertence, surprise or excusable neglect and no prejudice was caused. The showing required of a claimant seeking relief in filing a late claim on this grounds is the same as that required by Code of Civil Procedure §473 for relieving a party from default judgment. Viles v. State of California (1967) 66 Cal.2d 24, 29.  Because the law favors the

1   adjudication of disputes on the merits, courts liberally construe the statute providing for

2   discretionary relief from a judgment entered as result of party's mistake, inadvertence,

3   surprise, or excusable neglect in favor of relief.  Arambula v. Union Carbide Corp. (2005)

4   128 Cal.App.4th 333.

5       For the following reasons, in this case, the failure to timely present a claim was

6   through mistake, inadvertence and excusable neglect.

7       Petitioners timely filed the claim against the Los Angeles Police Department on

8   April 6, 2009.  However, it was mistakenly filed with the County of Los Angeles, not the

9   City of Los Angeles.  The form used, taken off the internet, was a County form.  However,

10  the information presented on the form correctly identified the Los Angeles Police

11  Department and each of the Los Angeles Police Officers involved.  (Exhibit "A")

12      When the Complaint in this matter was being prepared, it was realized that the

13  claims had been filed with the County instead of the City Clerk and immediately

14  Petitioners re-filed the claims with the City and also filed an Application to Present Late

15  Claim regarding damages also with the City.  That occurred on or about September 1,

16  2009.  The Claims are attached to the Declaration as Exhibit "B" and the Application to

17  Present Late Claim is attached as Exhibit "C".  Exhibit "E" is a true and correct copy of the

18  denial by the Office of the City Attorney of the Application for Leave to present a late

19  claim.

20      The same policy of **liberal relief** from default pursuant to C.C.P. §473 is followed

21  when relieving a party from the Gov. Code claim filing requirements.  Viles v. California,

22  *supra*, 66 Cal.2d at p. 32; Nilson v. Los Angeles (1987) Cal.App.2d 976, 979; Ebersol v.

23  Cowan (1983) 35 Cal.3d 427, 435; Moore v. Cal. Comm. College Dist. (1986) 157

24  Cal.App.3d 715, 721; Bettencourt v. Los Rios Community College Dist. (1986) 42 Cal.3d

25  270, 275.  In Viles, *supra*,  the Court noted the "well-recognized policy of the law to

26  liberally construe remedial statutes designed to protect persons within their purview, and

27  the modern trend of judicial decisions in favor of granting relief unless absolutely forbidden

28  by statute."  *Id.*, at p. 32.

PETITION FOR ORDER PERMITTING LATE CLAIM AGAINST GOVERNMENT ENTITY

5

1    'Excusable neglect' is generally defined as an error a reasonably prudent person

2    under the same or similar circumstances might have made.  Ambrose v. Michelin North

3    America, Inc., supra, 134 Cal.App.4th 1350.

4        In this case, Petitioners timely filed a claim naming the Los Angeles Police

5    Department but mistakenly filed this form with the County instead of the City.  Any

6    reasonably prudent person could easily have made this same mistake as Petitioners did.

7        In Bettencourt, supra, 42 Cal.3d 270, the plaintiffs brought an action for the

8    wrongful death of their son on a city college field trip. Plaintiffs' counsel, believing that the

9    college's employees worked for the state, filed a claim with the state, and did not discover

10   his mistake until after the 100-day deadline of Gov. Code, §911.2 (now six months.) The

11   court found the neglect excusable, even though counsel's declaration did not provide the

12   reason why he mistook the identity of one public entity for another, nor how he finally

13   discovered the error, concluding that these omissions alone did not provide a proper basis

14   for denying relief. Id. at p. 280.  The court noted that any doubts in counsel's declaration

15   had to be resolved in favor of granting relief. Id.

16       In Kaslavage v. West Kern County Water Dist. (1978), 84 Cal.App.3d, 527, the

17   attorney hired an investigator to obtain information about an accident that occurred when

18   plaintiff dove from a pipe into a canal.  Apparently, both the investigator and the attorney

19   assumed that the water district that owned the canal also owned the pipe. Consequently,

20   counsel presented a timely claim to the district that owned the canal. He did not learn that

21   the pipe was owned by a different water district until after the 100-day period had elapsed.

22   A phone call to one of the owners of the land or the owner of the canal would have

23   revealed the true owner of the pipe.  However, counsel neglected to make such a call.

24   Although the Court of Appeal characterized counsel's error as "grave," it found excusable

25   neglect and reversed the trial court's denial of relief. Id., at p. 529.

26       Bettencourt and Kaslavage involved the same excusable neglect involved in this

27   case, namely, filing a timely claim against the wrong entity. The grounds for granting the

28   Application are even more compelling in this case, since the Los Angeles Police

**PETITION FOR ORDER PERMITTING LATE CLAIM AGAINST GOVERNMENT ENTITY**

6

1    Department was correctly named.  It was timely filed, just at the wrong address.

2         In Flores v. Board of Supervisors (1970) 13 Cal.App.3d 480, the attorney was

3    aware of §911.2's 100-day limit for filing a claim with a public entity.  Nevertheless, he did

4    not file the claim until 123 days after the cause of action had accrued.  His explanation

5    was simply that he had failed to open a file which would have reminded him of the 100-

6    day deadline.  The Court of Appeal found that the trial court abused its discretion in failing

7    to excuse the attorney's neglect.  The attorney's mistake in Flores was more culpable

8    than Respondent's mistake here.  The attorney in Flores knew exactly what he had to do

9    to protect his client's interests and when he had to do it.  Nevertheless, he failed to act in

10   a timely manner.  Contrast this with Respondent's conduct in this case, who moved

11   promptly in seeking relief, from filing the document at the wrong location.

12        In determining whether an attorney's error constitutes excusable neglect, the courts

13   also consider the attorney's overall diligence or lack thereof in addition to examining the

14   attorney's error.  Bettencourt, supra, 42 Cal.3d 270 at p. 278.  Here, although Petitioners

15   had made a mistake on the address of the filing that they properly filed against the Los

16   Angeles Police Department, but in using the wrong form, filed in the wrong location with

17   the County instead of the City.  (Both forms require almost identical information).

18        The claim-filing requirement of the Government Claims Act serves several

19   purposes: (1) provide the public entity with sufficient information to allow it to make a

20   thorough investigation of the matter; (2) facilitate settlement of meritorious claims; (3)

21   enable the public entity to engage in fiscal planning; and (4) avoid similar liability in the

22   future.  Westcon Const. Corp. v. County of Sacramento (2007) 152 Cal.App.4th 183.  It

23   gives public entity prompt notice of a claim so it can investigate strengths and

24   weaknesses of claim while evidence is still fresh and witnesses are available, it affords

25   opportunity for amicable adjustment, and it informs public entity of potential liability so it

26   can better prepare for upcoming fiscal year.  Renteria v. Juvenile Justice, Dept. of

27   Corrections and Rehabilitation (2006) 135 Cal.App.4th 903.  The purpose of requiring the

28   filing of claims, and of prescribing time limit frames in which such claims may be filed, is

**PETITION FOR ORDER PERMITTING LATE CLAIM AGAINST GOVERNMENT ENTITY**

7

1   to give public entity the opportunity to investigate the facts while evidence is fresh and

2   witnesses are available, as well as to settle meritorious cases without the need of

3   litigation; furthermore, prompt presentation of claim for money permits recipient public

4   entity to make appropriate physical planning decision.  Nelson v. Superior Court (2001)

5   89 Cal.App.4th 565, Christopher P. v. Mojave Unified School Dist. (1993)19 Cal.App.4th

6   165, City of Ontario v. Superior Court (1993) 12 Cal.App.4th 894.

7       In this case, since the late claim is being presented within a reasonable time, not

8   exceeding one (1) year, all of the above mentioned purposes are met.  Therefore, no real

9   prejudice will be caused to Respondents if the Application is granted.  The prejudice to

10   Petitioners, however, who sustained severe injuries, will be substantial, as they will not

11   be able to find redress for the death of their spouse, brother and/or son.

12                          **V.**

13         **ANY DOUBTS REGARDING THE FILING OF A PETITION**

14         **ARE TO BE RESOLVED IN FAVOR OF THE PETITIONER**

15       In the case of Ovando v. County of Los Angeles (2008) 159 Cal.App.4th 42, the

16   Appellate Court held in favor of granting petitioner's filing of a petition for an order

17   permitting late claim: "Section 946.6 is a remedial statute intended 'to provide relief from

18   technical rules that otherwise provide a trap for the unwary claimant'.  As such, it is

19   construed in favor of relief whenever possible.  The policy favoring trial on the merits is

20   the primary policy underlying 946.6.  In order to implement this policy, any doubt should

21   be resolved in favor of granting relief.  Consequently, where uncontradicted evidence or

22   affidavits of the petitioner establish adequate cause for relief, denial of relief constitutes

23   an abuse of discretion.  In light of the policy considerations underlying section 946.6, a

24   Trial Court decision denying relief will be scrutinized more carefully in an order granting

25   relief. Bettencourt (supra).

26   // // //

27   // // //

28                           **VI.**

1

## **CONCLUSION**

2       Wherefore, it is respectfully requested that the Petitioners' Petition for Order

3  Permitting Late Claim be granted.

4       DATED:  December 29, 2009

COPY

5
                                        _____
6                                        JEFFERY A. BRIGHTWELL, Attorney for
                                         Petitioners, VANESSA BROOKMAN;
7                                        SHERRY HERNANDEZ; DIANA SOUQI

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

STATE OF CALIFORNIA      )
                                    )
COUNTY OF LOS ANGELES   )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 23822 West Valencia Boulevard, Suite 201, Valencia, California 91355.

On March 22, 2010, I served the foregoing document described as: **SECOND AMENDED COMPLAINT FOR DAMAGES**, on the interested parties this action:

[X] by placing [ ] the original [ X ] a true copy thereof enclosed in a sealed envelope addressed as follows:

Wendy Shapero, Esq.                   *Attorney for Defendants, CITY OF LOS*
CITY ATTORNEY'S OFFICE       *ANGELES and LOS ANGELES POLICE*
City of Los Angeles                    *DEPARTMENT*
City Hall East
200 N. Main Street, Room 800
Los Angeles California 90012

[X] (BY MAIL) I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Santa Clarita, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] (BY FACSIMILE TRANSMISSION) I delivered such document by facsimile transmission.

[ ] (PERSONAL SERVICE) I delivered such envelope by hand to the attorney listed above.

[ ] (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X] (FEDERAL) I declare that I am employed in the office of a member of the board of this Court at whose direction service was made.

Executed on March 22, 2010, at Valencia, California.

Kristin Berryman

47       Plaintiffs' Second Amended Complaint for Damages